KOSCIUSKO P. PEET, ADMINISTRATOR, ETC., v. THE GREAT
    CAMP OF THE KNIGHTS OF THE MACCABEES OF
        THE WORLD FOR THE STATE OF MICHIGAN.

*Mutual benefit associations—Assessment—Notice—Forfeiture of certificate—Action by administrator.*

1. An objection that an administrator is not the proper person to bring suit upon a certificate of insurance in which the member to whom it is issued is the beneficiary should have no weight where the administrator is also the sole heir at law of the deceased, and entitled to the money due on the certificate. *Aveling v. Association,* 72 Mich. 7.

2. The finance keeper of a subordinate tent of a mutual benefit association, whose duty it was to notifiy members of assessments, failed to give such notice to a member, and also failed to notify the association of the names of the members in arrear therefor, and under the laws of the order the subordinate tent was suspended. No notice of such suspension was given to the member, who was in good standing except as to the payment of said assessment, nor did the constitution, by-laws, or rules of the order require the giving of such notice at the time the member received his certificate. Before the reinstatement of the subordinate tent, the member died, having taken no steps to relieve himself of the forfeiture worked by such suspension. And it is held that the member was not entitled to notice of such suspension, of which it was evidently intended he would take notice, it being presumed, and not unreasonably so, that he would know when his tent was suspended.

Error to Gratiot. (Hart, J.) Argued June 27, 1890. Decided November 14, 1890.

*Assumpsit.* Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*James L. Clark* and *George P. Stone,* for appellant.
*De Vere Hall,* for defendant.

MORSE, J. The defendant is a mutual benefit association, organizing tents or subordinate lodges in all places within the State, for moral, social, and intellectual advancement, and also for the purpose of establishing a benefit fund, from which, on satisfactory evidence of reaching 70 years of age, or of total or permanent disability, of a member who has complied with all of its requirements, or of his death without either of these events having transpired, a sum not exceeding $2,000 shall be paid him, or his widow, children, dependents, mother, father, sister, brother, or betrothed, as he may direct, and as the endowment laws provide. The organization proper is divided into three distinct branches: The Supreme Tent of the Knights of the Maccabees of the World, the jurisdiction of which is co-extensive with the world; the Great Camp of the State of Michigan; and the subordinate tents or local lodges, to which all members belong, and which are the life of the organization.

The Great Camp, the defendant in this action, is composed of certain officers and one representative from each subordinate tent in the State, selected yearly by such tents, and also of such persons as may have filled the office of great commander of the Great Camp of the State. The Great Camp has full and complete jurisdiction within this State over all subordinate tents. Its meetings are controlled by the representatives from these tents, selected yearly, who can amend the constitution and by-laws by a two-thirds vote. The subordinate tents are governed by its action in the regulation and control of its endowment fund, fixing the death-rate of assessments on the members of subordinate tents. It receives appeals and redresses grievances. It originates and regulates the means of its own support, and decides all questions arising out of its laws and by-laws.

The plaintiff's intestate, Kosko R. Peet, became a member of Ithaca Tent No. 128, located at Ithaca, Gratiot county, October 8, 1885. He died September 25, 1888. When he joined the subordinate tent at Ithaca, he received two certificates in the following form except as to number, the second one being numbered 1,182:

"Incorporated by Special Act of the State Legislature.

"GREAT CAMP OF THE

"KNIGHTS OF THE MACCABEES OF THE WORLD

"No. 6,068.        FOR THE STATE OF MICHIGAN.        FIRST CLASS.

"RATE OF ASSESSMENT.

"Age 20.        ENDOWMENT CERTIFICATE.        $1.00.

"This certifies that Sir Knight Kosko R. Peet is a member of Ithaca Tent No. 128, located at Ithaca, Michigan, and that he is a beneficiary in good standing in the first class; that in accordance with, and under the provisions of, the laws governing the order, he is entitled to receive one assessment on the membership, but not over in amount one thousand dollars, as a benefit to himself, upon satisfactory proof of his death, and the surrender of this certificate, provided he shall have in every particular complied with all the rules and regulations of the order and of the first class, and in case of permanent or total disability, or upon reaching the age of seventy years, he will be entitled to receive annually thereafter one-tenth of said endowment, as provided in the laws of the order.

"In testimony whereof, the Great Camp has caused the great commander and great record keeper to attest and [Seal of the Great Camp.] affix hereto the seal of the Great Camp of the Knights of the Maccabees of the World for Michigan, this eighth day of October, 1885.

"ROWLAND CONNOR, Gt. Com.

"N. S. BOYNTON, Gt. R. K.

"Countersigned, sealed, and delivered by the Sir Knight Commander and Sir Knight Record Keeper of Ithaca [Seal of Ithaca Tent.] Tent No. 128, K. O. T. M. O. T. W., this 12th day of Oct., 1885.

"CHAS. J. PAINE, Sir Kt. Com.

"B. K. TODD, Sir Kt. R. K."

He left no will, and his father, Kosciusko P. Peet, was his sole heir at law. Administration was taken out upon his estate, and his father was appointed his administrator. He owed no debts except a trifling amount, which was paid out of moneys belonging to his estate.

Notice was duly given of his death, and in the suit now here but three objections are raised to the payment of this sum of $2,000 evidenced by these certificates.

First, it is claimed that the administrator is not the proper person to bring the suit. It was upon this ground that the circuit judge directed a verdict. This is a technical objection, and should have had no weight, inasmuch as the person suing as administrator was the sole heir at law of deceased, and entitled to the whole fund, if any sum of money was found due from defendant. For a similar case in this Court, see *Aveling v. Association*, 72 Mich. 7. But if either one of the other objections is good, the court below was right in his direction of the verdict, and we shall therefore examine them.

Among the objects of the order as stated in its constitution is the following:

"Section 4, Art. 2: To establish a benefit fund or funds from which, on satisfactory evidence of the death, or on reaching 70 years of age, or total and permanent disability of a member of the order who has complied with all its lawful requirements, a sum not exceeding $2,000 shall be paid to the member, widow, children, dependents, mother, father, sister, brother, or betrothed of a member, as he may direct, and as the endowment laws provide."

This article was not in the constitution at the time deceased became a member, but was adopted in 1886. Section 6 of Article 1 of the endowment laws provides that

" No beneficiary or endowment certificate shall be made payable to any other person than the wife, children, dependents, father, mother, sister, brother, or betrothed of the member; nor can any such certificate be transferred or assigned by a member to any other person than the above, and no transfer or assignment of a certificate will be binding on this association unless the member shall make such change, as hereinafter provided. In case a member desires to change the beneficiary named in his

certificate, he shall make a written request therefor, and deliver the same, with his certificate and the sum of fifty cents, to the record keeper of his tent. On receiving such written request, the record keeper shall forward the same to the great record keeper, who shall thereupon issue a new certificate. In case a member shall decease without having made direction as to payment, the same shall be paid to his legal heirs, each to receive such portion as he or she would receive under the laws of the State relating to the descent of personal property."

Kosko R. Peet died without any change in his certificates, and without making any direction as to whom they should be paid.

It is insisted by the counsel for the defendant that the time never arrived when the association was liable to pay the certificates; that when issued payable to the member himself as beneficiary, as was done, it is claimed, in this case, such certificate, under the section above quoted relating to the objects of the order, merely provides that the amount to be paid shall be one-tenth annually in case of permanent disability, or upon reaching 70 years of age, and that neither of these events has transpired; and that said certificates, therefore, never matured. The certificates do not so read, nor was such the law of the order, under any construction, when they were issued. It is contended by plaintiff's attorneys that subsequent action could not void or alter these certificates, which, as they claim, represent the contract of insurance then made, in connection with the laws of the order then existing. Without passing upon this latter contention, we are satisfied that the endowment laws and the constitution of the order, as they now stand, contemplate that, when the certificate runs to the member, as in this case, and he dies without any direction as to its payment, it can be collected by his legal heirs, especially when such heirs belong to the classes of persons to whom he might have directed it to be made payable.

The last objection to plaintiff's recovery is that he was not a member in good standing of the defendant when he died, and had not complied with the rules, laws, and requirements of the order. The facts are not particularly in dispute, and are substantially as follows: The money to pay death or disability losses is obtained by the Great Camp by assessments upon the members of the subordinate tents. The mode of assessment is as follows: Each tent is required to collect from the members one death assessment, known as the "advance death assessment," and retain the same until called for by the Great Camp. When a loss occurs, and the Great Camp has not money enough in the endowment fund to pay it, a notice is sent to the subordinate tents, requiring them to forward to the Great Camp the assessment in their hands, and commanding them to collect from the members another advance assessment. In this case, on May 1, 1888, assessment No. 23 was called for, and assessment No. 24 ordered. The finance keeper of Ithaca Tent charged Peet with the amount due from him on assessment No. 24, which Peet paid May 31, 1888, balancing his account to that date. The finance keeper of said tent forwarded assessment No. 24, which was called for June 5, 1888. But on the same date assessment No. 25 was called for. The finance keeper did not charge Peet with this assessment upon the books, and never notified him in any way of the assessment. He also failed to notify the Great Camp of the members who failed to pay this assessment No. 25, as he should have done, and when the assessment was called for did not forward it to the Great Camp, and the Ithaca Tent was suspended. It is not shown that Peet had any notice of this suspension, but it is shown that there were no meetings, ·which were required to be monthly, of the Ithaca Tent from February 1, 1888, until

October, 1888, when it was reinstated. This reinstatement was after Peet's death. It is admitted that the suspension of the tent was proper and legal, under the laws of the order. This suspension of the tent also suspends the members, unless, when in good standing at the time of such suspension, they shall apply to the great record keeper of the Great Camp, within 30 days from such suspension, for a special certificate. Obtaining such special certificate entitles them to the endowments (if they are endowment members), provided they pay the assessments to said great record keeper as they fall due, and provided they affiliate at the earliest practicable time with some tent. Peet did not do this, and therefore at the time of his death was a member of a suspended tent, and had not paid the assessments required of him under the laws of the order.

It is contended by the attorneys for plaintiff that this was through no fault of his; that he had paid all assessments required of which he received notice, and that, not being notified of the suspension of the tent, he was not required to apply for a special certificate; that the defendant's laws provide that the member—

"Shall pay his assessment to said finance keeper within 30 days from the date of the great record keeper's notice of such assessment so served."

That the service so mentioned is to be made upon blanks furnished by the great record keeper, and—

"By delivering the same to each endowment member personally, or by putting said notice into the post-office, properly inclosed in an envelope directed to such member at his place of residence, with postage prepaid."

That the defendant, not receiving from Ithaca Tent a return showing service of the notice of assessment No. 25 on plaintiff's intestate, was bound to know that it had

not been served, and it became its duty to serve it, and that it also became the duty of the defendant, upon suspending the tent, to give Kosko R. Peet notice of the same, so that he might save his rights and benefits by paying his assessment and taking his special certificate; that the service of such notice was a necessary prerequisite to a legal forfeiture of the rights of said Peet. The following cases are cited in support of this contention: *Castner v. Insurance Co.*, 50 Mich. 273 (15 N. W. Rep. 452); *Baker v. Insurance Co.*, 51 Id. 243 (16 N. W. Rep. 391); *Bates v. Association*, Id. 587 (17 N. W. Rep. 67); *Miner v. Association*, 63 Id. 338 (29 N. W. Rep. 852). These cases do not apply. In each of them the notices of assessment were, by the laws of the company, to be served by the secretary of the company or association. None of them were associations of the character and kind of the defendant here.

The question arises, then, without any light from the holdings of our own Court, whether the due suspension of the tent, but without any fault upon the part of Peet, and without any notice to him, operated as a suspension as to him and a forfeiture of his rights. In this connection appears a resolution adopted by the Great Camp after the plaintiff's intestate became a member, and on August 10, 1886, at its annual meeting at Kalamazoo, at which meeting Ithaca Tent was represented by its duly-elected delegate, who took part in its proceedings. The resolution is as follows:

" *Resolved*, That the subordinate tent shall be the agent of its members in the transmission of all dues and assessments to the Great Camp, and the Great Camp will in no case be liable for any default or negligence on the part of a subordinate tent or its officers in such transmission, or the serving of notices of assessments or suspensions, required under the endowment laws of the order."

The counsel for plaintiff meet this resolution by saying

that it was adopted after the plaintiff's intestate became a member, after his rights were fixed under the contract as first made; that it "added a new cause of forfeiture, and worked, to a certain extent, a radical change in the contract," which could not be done under the authority of *Becker v. Insurance Co.*, 48 Mich. 610. This case does not seem to be in point. We do not think the plaintiff's intestate was entitled to any notice of the suspension of the tent. The constitution, by-laws, and rules of the order, when he became a member, did not provide for any such notice to him from any source, and yet he would have been suspended unless he applied for the special certificate, and paid all assessments and dues, within 30 days from such suspension. It was evidently intended that he would take notice of such suspension. It was presumed, and not unreasonably so, that he would know when his tent was suspended. The resolution of August 10, 1886, as far as it applied to notices of suspension, did not add any additional burden to him, or impose any new forfeiture. Further than this it is not necessary to pass upon this resolution. It only made clear in this respect what was manifestly the intent of the laws of the association before its adoption.

It follows that the judgment of the lower court was right, and must be affirmed.

CHAMPLIN, C. J., and GRANT, J., concurred with MORSE, J.

CAHILL, J. I think the member was entitled to personal notice of his default before his membership could be forfeited for non-payment of dues.

LONG, J., did not sit.