[District Grand Lodge No. 23, United Order of Odd Fellows in
America v. Hill.]

# District Grand Lodge No. 23, United Order of Odd Fellows in America *v*. Hill.

## *Assumpsit.*

(Decided Dec. 1, 1911.   57 South. 147.)

1. *Insurance; Mutual Benefit; Parties.*—Where the constitution
of the State Grand Lodge of a fraternal order provides that every
member of each of the lodges in good financial standing is insured
in the sum of $500, this constitutes the order a beneficial life asso-
ciation, and the order is liable on such contract of insurance al-
though for the convenience and proper management of the insur-
ance features, it has a special endowment department.

2. *Same; Insurable Interest.*—Where the action was on an insur-
ance policy, evidence that the beneficiary therein, who was not re-
lated to the insured, upon his request and promise to will her his
life insurance, moved into his house and cared for him until his
death, and that, in pursuance of such an agreement, he did in fact
surrender an existing policy and have a new one issued with her
as the beneficiary, was relevant to show plaintiff's insurable interest.

3. *Same.*—Where the beneficiary in a policy of life insurance had
cared for the insured at an average cost of $15 per month for three
years, under an agreement that the insured would will her his life
insurance, and such insured made such person a beneficiary in the
policy of life insurance, the beneficiary had such an insurable in-
terest as would render untenable the objection that the certificate
was void in its inception as a wager policy.

4. *Same; Construction of Constitution and By-laws; Forfeiture.*
—Although the constitution and by-laws of a beneficial life insur-
ance association provides that a member of a lodge which is not in
good financial standing with the order on account of non-payment
of dues, is during such period of disability not insured, the associa-
tion must furnish reasonable security to its members against the
negligence, and inefficiency of the officers under whom the control
of its affairs are placed, and such a provision cannot be asserted as
a defense unless made out with literal exactness.

5. *Same; Waiver of Rights.*—Where the constitution and by-laws
of a grand lodge of a fraternal life assurance association provides
that its subordinate lodges in arrears for dues, should be suspended,
that no member thereof should be entitled to insurance during this
suspension, and that re-insurance might be had by the payment of
a certain sum per member, and said constitution and by-laws pro-
vide for certain notice of such delinquency in a lodge publication,
failure to notify a subordinate lodge claimed to have been delin-
quent at the death of an insured member, or to attempt to collect

[District Grand Lodge No. 23, United Order of Odd Fellows in America v. Hill.]

the penalty on reinstatement, taken with the collection and retention of dues and arrears, amounts to a waiver of the right to forfeit policies for the alleged delinquency of the lodge.

6. *Same; Proof of Death; Waiver of Defect.*—Defects in proof of death under an insurance policy are waived by a failure to make seasonable and specific objections thereto; hence, where a fraternal benefit association, upon receipt of proof of death of insured, based its refusal to pay upon the ground that the lodge to which the member belonged was in arrears to the Grand Lodge at the time of his death, it thereby waived any other defect which may have existed in the proof when presentd.

7. *Witnesses; Competency; Insurable Interest.*—A beneficiary in a policy of life insurance, is competent to testify as to facts showing her insurable interest in the certificate, in an action by her against the insurance company issuing the certificate, as it was not the assertion of a claim against the estate of the decedent.

8. *Appeal and Error; Review; Conclusiveness of Verdict.*—Where the action is on a certificate of insurance issued by a fraternal benefit association, and the evidence as to whether the insured paid his dues is conflicting, the verdict of the jury thereon is conclusive.

APPEAL from Montgomery Circuit Court.

Heard before Hon. W. W. PEARSON.

Action by Annie Hill against the District Grand Lodge No. 23, United Order of Odd Fellows in America. From a judgment for plaintiff, defendant appeals. Affirmed. .

The facts sufficiently appear in the opinion of the court. The following portions of the oral charge were excepted to: (1) "But it is insisted here by the plaintiff that Pines was financial, in that he was entitled to certain sick benefits, and that these sick benefits paid the premium. If that be true, then he would have been financial, if, as a matter of fact, his indebtedness to the local lodge had been paid at the time of his death, either in money sent by him, or by the beneficiary, to the lodge, or if the money was taken out of the sick benefit to which he was entitled and appropriated to the payment of the premium." (2) "If you find from this evidence, in connection with this policy that was offered in evidence, that there was an endowment department of the

defendant, which was controlled and operated in effect
by the defendant itself through its executive committee,
or through its grand officers, and that the department
representing the company itself issued this policy, then
the defendant would be liable for the acts of its depart-
ment in that behalf."

The following charges were refused the defendant:
(8) "If the policy sued on had become null and void
before the death of said Pines, the evidence in this case
does not show a waiver of said forfeiture after his
death."     (5) "The policy offered in evidence in this
case does not purport to be the contract or policy or cer-
tificate of the defendant." (6) "Unless the evidence
in this case shows that said Pines was in good standing
in his lodge and the order at the time of his death, and
that due proof thereof was furnished the said endow-
ment department, as stated in said forfeiture, the plain-
tiff cannot recover herein." (12) "If the jury believe
from the evidence in this case that at the time of the
death of Pines his lodge had not sent to the endowment
secretary 35 cents dues paid by said Pines, or at his in-
stance, for May, June, or July, 1908, the plaintiff can-
not recover." (9) Practically same as 12. (10) "If
the jury believe from the evidence that said Pines, or
his lodge, failed to comply with the requirements set
forth in said policy, such failure rendered said policy
null and void." (3) "If the jury believe, from all the
evidence in this case, that the lodge of which said Pines
was a member failed to forward to the endowment sec-
retary, on or before the 10th day of May, June, or July,
1908, 35 cents for each financial member on said lodge
roll at the time said dues became due under said policy,
the plaintiff cannot recover." The other charges assert
the proposition of no waiver of death notice.

BALL & SAMFORD, for appellant. No brief came to the Reporter.

TYSON, WILSON & MARTIN, for appellee. The court properly permitted the beneficiary to show her action in regard to caring for the insured as shedding light on her insurable interest and to show value for the issuance of the policy.—25 Cyc. 707; 113 Pa. St. 326. The action was not an assertion of a claim against the estate of the deceased, and hence, the beneficiary was not rendered imcompetent to testify. The point that this was not the obligation of the defendant, but of its endowment department, could only be raised by a plea of non est factum, and in the absence of such a plea the policy became admissible.—*Int. Har. Co. v. Gladney*, 157 Ala. 548; *Tuscaloosa County v. Perry*, 85 Ala. 158. The burden was on the defendant to set up and prove the forfeiture.—*New York Co. v. McPherson*, 137 Ala. 116; *U. S. Co. v. Lesser*, 126 Ala. 568; *Bolden v. Phenix Co.*, 112 Ala. 422; 29 Cyc. 245. Having declined to pay for a different reason on receipt of proof of death of Pines, the company cannot be now heard to say that the death notice was insufficient.—*Sanders v. Davis*, 153 Ala. 375; *Stewart v. Mitchum*, 135 Ala. 549; *Tabor v. Ins. Co.*, 124 Ala. 681; see also *Pa. Cas. Co. v. Mitchell*, 157 Ala. 589; *Ga. Co. v. Allen*, 128 Ala. 456; *Com. Co. v. Allen*, 80 Ala. 571. Counsel discuss refused charges with citation of authority, but it is not deemed necessary to here set them out.

DE GRAFFENRIED, J.—The Grand United Order of Odd Fellows in America is a beneficial unincorporated association operating in the United States, and having for its object the social enjoyment and good fellowship of its members, the insurance of their lives for

the benefit of their wives and children, or such other persons as the members may designate as their beneficiaries, and providing means for the comfort or sustenance of its members when sick, their funerals, etc. The order seems to be composed of one Supreme Lodge, of Grand Lodges, and of lodges. The Supreme Lodge is the general governing body of the entire order, having certain officers whose duties require them to supervise the various Grand Lodges, and the Grand Lodges are, of course, subject to all the reasonable rules and regulations adopted by the Supreme Lodge. A Grand Lodge appears to be that part of the order which governs its business and social affairs in a state or territory, and a lodge that part of it which is confined in its operations to a particular community. The Supreme Lodge, the Grand Lodges, and the various lodges constitute the order or society.—Bacon on Benefit Societies and Life Ins. § 74.

In Alabama the Grand Lodge, through which the order operates in the state, is known as "District Grand Lodge of Alabama No. 23, Grand United Order of Odd Fellows," and in article 3 of the constitution of said Grand Lodge it is provided: "The amount of insurance to which each member shall be entitled under this plan shall be five hundred dollars to be paid to the person or persons named on the face of the policy within sixty days after the filing of the death notice, as per requirements under article xi of this constitution." Under the constitution of the parent order, a member in good standing in his lodge is a financial member, and each Grand Lodge is authorized by proper by laws to create an endowment department, and to compel each of its members to become an endowment member. Under the constitution of the endowment department of the Grand Lodge in control of the affairs of the order in Alabama

and known as "District Grand Lodge of Alabama Number 23, Grand United Order of Odd Fellows," every financial member is required to be an endowment member, viz., a member with a policy of insurance payable to some beneficiary named by him for the sum of $500. So that, under regulations authorized and sanctioned by "District Grand Lodge of Alabama Number 23, Grand United Order of Odd Fellows," every member of each of its lodges in good financial standing with the order is insured in the sum of $500 by said Grand Lodge. A member of a lodge not in good financial standing, on account of the nonpayment of dues, is during such period of disability and for such period of disability only not insured. It is therefore manifest that, while the appellant has certain officers whose principal duties are to look after the financial standing of each of its lodges and each of its members and for that reason has what it terms its endowment department, this is for the convenience and proper management of the insurance feature, and the appellant is, as to each of its members, a beneficial life insurance association. It follows, therefore, that appellant, and not its endowment department, is the party liable to appellee if appellee is entitled to recover on the certificate of life insurance in evidence in this case. No other conclusion can be drawn from the language of the constitution of the order or the constitution of the endowment department of said Grand Lodge of Alabama. The money collected by the endowment department is for the equal benefit of all the members of the Grand Lodge in good financial standing, just as is all the other money paid in by its members, except such part of it as is necessary to meet the current expenses of the lodges, the Grand Lodge, etc., and all of such members in the aggregate, therefore, are the real owners of the money for said

purposes. There is no magic in mere words to change
the real into the unreal. A device of words cannot be
imposed upon the court in place of an actuality of fact.
—*Union Mut. Ins. Co. v. Wilkinson,* 13 Wall. 235, 20
L. Ed. 617.

1. It appears from the evidence that one Pines, who
was an old man, and who, so far as the evidence dis-
closes, had no relations, several years before his death
went to appellee, who was a married woman, and asked
her to move with her husband to his home, and care
for him while he lived, saying that, if she would do so,.
"he would treat them as a parent and will her his life
insurance policy." It further appears that Pines owned
a home, but that he had no other property, as the evi-
dence shows that appellee accepted his proposition and
for several years furnished him with food and clothing,
paying his medical bills, nursing him when sick, and,
as appellee in her testimony expresses it, expending on
him an average of $15 per month from the time she mov-
ed into his home until he died. Appellee testified that
prior to the issuance of the certificate sued on in this
action Pines had another policy, which had been issued
to him by appellant; that he destroyed this policy, and
in its stead received from appellant the certificate pay-
able to her as his beneficiary, which is the subject of this
litigation. When the first policy was, if ever, issued by
appellee, the evidence does not disclose, but we are of
the opinion that appellee's testimony on this subject was
competent and material. Appellant denied liability to
appellee upon the ground, among others, that appellee
was not related to Pines, and had no insurable interest
in his life, and we think that all this evidence was rele-
vant to that issue. The undisputed evidence shows that
appellant was not related to Pines, and that, when the
present certificate was issued, it was issued to Pines for

appellee's benefit "as his guardian." If it be true, as testified by appellee, that she undertook the care of Pines under an agreement that he would, for so doing, "will her his life insurance policy," the above evidence has a strong tendency to show that the certificate was not "void in its inception as a wagering policy." It tends to show, on the contrary, that the present certificate was issued in lieu of an already existing policy, and that in having appellee named in the certificate as his beneficiary Pines was simply complying with his agreement to "will her his life insurance policy" when she moved with him and undertook to care and provide for him.—1 Bacon on Benefit Societies and Life Ins. 249.

The evidence further tended to show that, when the certificate was issued, Pines had been provided for by appellee for about three years at a cost of about $15 per month, a sum aggregating over $500, and it therefore seems clear that under the most rigid application of the doctrine that the beneficiary in a life insurance policy must possess an insurable interest in the life of the assured, the appellee, if her evidence is to be believed, had an insurable interest in the life of the assured to the full amount of the certificate when it was issued, by the appellant.—*Helmetag's Adm'x v. Miller*, 76 Ala. 183, 52 Am. Rep. 316.

. Manifestly the appellee was competent to testify as a witness to the facts about which she was interrogated. She was by name the beneficiary in the certificate, and this suit was brought by her against the appellant, whose officers, for it, had issued the certificate. Pines' estate was not interested, and on this issue the question simply was whether appellee possessed an insurable interest in the life of Pines. Appellee was not undertaking to enforce a claim against the estate of Pines, and the question of his indebtedness to appellee, as a

matter to support the legality of the certificate, was, so
far as the estate of Pines was concerned, merely a col-
lateral fact to which the witness could testify. Pines'
indebtedness to appellee was simply the foundation
upon which her rights against appellant rested, and
was not the foundation of any claims asserted or sought
to be asserted by her against the estate of Pines.—*Wood
v. Brewer*, 73 Ala. 259; *Miller v. Cannon*, 84 Ala. 59, 4
South. 204; 3 Mayfield's Dig. 501, § 1305.

2.   It is insisted by appellant that appellee was not
entitled to recover because Hope Lodge, of which Pines
was a member, was in arrears with the District Grand
Lodge at the time of Pines' death, and that his benefi-
ciary, on that account, was not entitled to participate
in its endowment fund.   While appellant is a social or-
ganization engaged in the business, among other things,
of furnishing a limited amount of insurance upon a pro-
fessed remunerative basis to its members, nevertheless
the purposes of its organization must not be lost sight
of, and it must conduct its affairs under reasonable reg-
ulations through its officers as to furnish at least rea-
sonable security to its members, acting in good faith
and meeting their obligations, against the negligence or
inefficiency of those under whose control it places its
affairs.—*Supreme Lodge Knights of Pythias v. Withers*,
177 U. S. 260, 20 Sup. Ct. 611, 44 L. Ed. 762.

The defense relied upon is an extremely technical one,
and is opposed to that true sense of reason, right, and
justice which should form the basis of every contract,
by-law, or regulation affecting the obligations of the
members of society to each other.   When it is remember-
ed that the appellant is a beneficial society, permitted
by the law to exercise its various functions because of
its express purpose to minister to the needs of its mem-
bers when they become the subjects of disease or mis-

fortune and to furnish to each of them, at his death, a modest sum, in the form of life insurance, to be paid to his beneficiary, some person named by him in his certificate as the object of his care, and solicitude, the hardship and oppression which would result from a rigid enforcement of the particular provision set up as a defense to this action become apparent. Such a provision would not be permitted in a life insurance policy issued by a purely business organization, and in such case such a defense could not, and would not, be tolerated. When interposed by a beneficial society— a society of benevolence—the law will certainly not permit such a defense to prevail unless it is made out with literal exactness.—*Supreme Lodge Knights of Pythias v. Withers*, 177 C. S. 260, 20 Sup. Ct. 611, 44 L. Ed. 762.

There was abundant evidence in the case tending to show that Hope Lodge was never, during the period covered by this controversy, treated by appellant as not in good standing or as suspended on account of the lax manner in which its secretary remitted its dues to his superior officer. Appellant claimed in November, when the certificate was presented for payment, that the policy was void because the lodge was in arrears when Pines died, and yet, during that period of alleged suspension, Hope Lodge, as a part of appellant's organization, was in the active performance of its functions, holding itself out as a lodge in good standing, collecting money, holding its meetings with full authority to take in new members, and in full possession of every power possessed by any other lodge in Alabama. The tendency of men to form themselves into social and beneficial associations has been long recognized, and the law will not permit the officials of such organizations by a systematic course of neglect or misconduct to so conduct the affairs of such an association that some provision

of its constitution or one of its by-laws adopted for a possible good purpose, shall in fact become an instrument of oppression or fraud upon its innocent and helpless members.—*Supreme Lodge Knights of Pythias v. Withers, supra.*

There was, it seems to us, sufficient evidence in this case from which the jury might have inferred that the refusal of appellant to pay the amount of this certificate because of the fact that Hope Lodge was in arrears or in a state of suspension at the time Pines died was an afterthought of appellant's agent; that such condition of the lodge was claimed because Pines died, and for no other reason; and that, in truth, appellant's officials so conducted its affairs certainly during the year of Pines' death that, as to Hope Lodge, there was a waiver by appellant of the provision of its constitution or by-laws which provides as follows: "Sec. 3. Any lodge 60 days in arrears for the amount of two consecutive months' dues shall be suspended and reported to the District Grand Lodge, and no member of said lodge shall be entitled to insurance under this plan, except as hereinbefore provided." In this connection it may be well for us to call attention to the following other provision of the constitution and by-laws of said District Grand Lodge: "Sec. 4. Any lodge suspended by the operation of the preceding section may be reinstated upon the payment of $2.00 per member." We call attention also to the following provision of the constitution and by-laws of the parent order, of which the District Grand Lodge of Alabama is but a part: "Sec. 6. The Grand Secretary is hereby required to notify each nonfinancial, delinquent, suspended, or forfeited lodge of its being nonfinancial, delinqent, suspended or forfeited, with the amount of its indebtedness, adding in each case a fine

of $2.00, and publish each such notice in the regular quarterly circular."

It is not contended that the members of Hope Lodge were at any time required to pay the $2 provided for in section 4 of the constitution or by-laws of the District Grand Lodge of Alabama, nor is it pretended that Hope Lodge was ever notified of its suspension, as provided in the above-quoted section 6 of the constitution or by-laws of the parent order. In other words, the evidence in the case tends to show that, while the dues of Hope Lodge were not remitted in strict compliance with the by-laws of the order, appellant took at no time any steps against Hope Lodge on account of such default, but, on the contrary, accepted the remittances when made, treated them when received as a compliance with its rules and regulations, and took no steps to notify the lodge or any of its members of any dereliction of duty on the part of the officials of the lodge, but permitted them to remain in utter ignorance of the fact that the lodge was not in perfect standing with the order. We take it that our Supreme Court has conclusively declared that in all cases forfeiture of insurance provided by mutual benefit associations is not encouraged by the courts, and in all cases where a forfeiture is claimed will preserve, if possible, the equitable rights of the holder of the certificate; and that, where a subordinate lodge or an organization, "through its officers, collects from its membership assessments and dues payable to the organization, such subordinate lodge or its officers are to be considered as the agents of the organization, and they may, by collecting and retaining dues in arrears, effect a waiver of a forfeiture and a revival of the liability of the organization, notwithstanding the prescribed mode of reinstatement has not been complied

with."—*United Order of the Golden Cross v. Hooser*,
100 Ala. 334, 49 South. 354.

It is manifest that there was evidence in this case
from which the jury had the right to infer that certainly
during the year in which Pines died the officers of the
District Grand Lodge were so lax in their enforcement
of the forfeiture clause of its by-laws above quoted as
to evidence a waiver by the appellant of such clause
in the by-laws and in the certificate, the subject of this
suit.—*United Order of the Golden Cross v. Hooser, su-
pra.*

The above being our conclusion, it is unnecessary for
us to consider the reasonableness or validity of the by-
law in question, or the reasonableness or validity of the
similar provision in the policy.

3. It is insisted by appellant that Pines did not pay
his dues as required by his policy and the by-laws, and
that, therefore, the appellee was not entitled to recover.
It is sufficient for us to say that the evidence was at
least in conflict on this subject, and that there was evi-
dence in the case for the jury to have found by its ver-
dict that Pines did pay his dues as they matured.

4. It is also insisted by appellant that the proofs of
death furnished by appellee to appellant did not comply
with the requirements of the policy and of the by-laws
of the association.

It is a well-recognized principle that when any defects
are found to exist in proofs of death made to
an insurance company which are capable of be-
ing remedied, if intelligently pointed out, such de-
fects in the proofs of death are deemed to be waived,
unless pointed out by the company within a reason-
able time after receipt of the proofs. In other
words, the insurer must object seasonably if at
all. "Insurance companies must not lure their pat-

rons into false security by which the latter may lose the means and opportunity of remedying defects in their preliminary proof, must not lead them astray by giving notice of one objection and then relying upon another, nor by a general refusal to pay, retain in reserve, for a surprise on the trial, some defect in the proof, which, perchance, if known might have been remedied. The law expects exact candor and good faith, and punishes with adverse presumptions those who fail to observe these cardinal virtues." Objections to the proofs are too late if not made until the trial.—Bacon on Benefit Societies and Life Insurance, § 441; *Fire Ins. Co. v. Felrath*, 77 Ala. 201, 54 Am. Rep. 58. In the present case, upon receipt of the proof of the death of Pines, the appellant based its refusal to pay upon the sole ground that Hope Lodge was in arrears with the Grand Lodge at the time of his death. It is therefore evident that it thereby waived any other defects which may have existed in the proof of death when presented to it. It is apparent, from what we have above said, that in our opinion the court below on the trial of this case committed no error in those portions of its oral charge to the jury to which exceptions were taken by appellant, and that it was free from error in refusing to give to the jury any of the written charges found in the bill of exceptions, which the appellant requested the court to give to the jury in its behalf.

There is no error in the record, and the judgment of the court below is affirmed.

Affirmed.