No. 3854

Second Circuit

———

EMANUEL v. CENTRAL GRAND INDE-PENDENT ORDER OF BROTHERS AND SISTERS OF LOVE AND CHARITY OF NORTH AND SOUTH AMERICA, LIBERIA AND ADJACENT ISLANDS

———

(February 26, 1931.  Opinion and Decree.)

———

John T. Carpenter, of Shreveport, attorney for plaintiff, appellee.

Sidney A. Marchand, of Donaldsonville, and Reynolds, Hamiter & Hendrick, of Shreveport, attorneys for defendant, appellant.

McGREGOR, J.  This is a suit by Emma Emanuel against the "Brothers and Sisters of Love and Charity of North and South America, Liberia and Adjacent Islands," a fraternal organization operated under a charter granted under the laws of Louisiana, upon an endowment policy for $300 issued to Mariah Baker, her mother, a member of Mars Hill Tabernacle No. 22, a subordinate lodge of the defendant, naming the plaintiff as beneficiary.  The defendant is very similar to all fraternal organizations, consisting of a grand lodge and subordinate or local lodges.  One of its departments is known as the Endowment Bureau.

The insured died on August 22, 1927, and at the time of her death all her dues had been paid to the proper officer of the local lodge or tabernacle.  The beneficiary has not been paid.  There is no rule or

by-law authorizing the beneficiary to take steps to make proof of the death of the insured and to collect the amount of the policy. The course to be pursued in case of the death of a member in good standing is set forth as follows in the by-laws of the order:

"Upon the death of a member in good standing the Worthy Superior of the Tabernacle of which deceased was a member shall forward the General Grand Worthy Superior notice of the death certified by the attending physician, the undertaker and three members and signed by the Financial Secretary of said Tabernacle. Upon the reception of such, the General Grand Worthy Superior shall enter the name of the deceased member upon a book kept for that purpose, including date of death, name of the Tabernacle and location of same.

"At the expiration of ninety (90) days from the date required above as to the death of a member, provided always that priority of death shall always be first considered, the General Grand Worthy Superior shall cause a check of one half of amount due to be issued in favor of the widow, heirs or legal representatives of the deceased member; said check to be sent direct to the Worthy Superior of said Tabernacle and the same to be given to the widow, heirs or legal representatives of the deceased, in any manner as will best subserve the interest of the Tabernacle and beneficiary."

As far as can be determined from the evidence no steps have been taken by the local lodge through its officers to collect the amount of this endowment policy. One witness says he saw the necessary blank filled out and sent into the Endowment Bureau, but the officers of the bureau deny that they ever got it. Consequently, since the local lodge or tabernacle appears not to have taken any steps to collect the amount of the policy, the plaintiff, beneficiary, has taken the only course left to her and has filed this suit to collect it. In her suit she demanded double the amount of the policy and attorney's fees. On trial there was judgment for the plaintiff for the face of the policy only and her demand for attorney's fee was rejected. The defendant has appealed and the plaintiff is asking for no increase of the judgment.

The defense urged by the defendant is that at the time of the death of the insured, Mars Hill Tabernacle No. 22 and the entire membership, including the insured, were dropped and suspended and remained so for several months. The fact is that it appears from the evidence that in the early part of September, 1927, some officer of Mars Hill Tabernacle made a remittance to the Endowment Bureau of $202.40. This remittance covered several months' dues as follows: Balance on December, 1926, $6.00; January, $40.50; February, $37.20; March, $37.20; April, $37.20; May, $37.20; part of June, $6.50. On December 6, 1927, the proper officer of the Endowment Bureau receipted the local lodge for $273.65. In this receipt it is stated that that sum paid the local lodge up to November. (Presumably including November.) There is nothing in the receipt to show how this money was applied but there is a letter in the record from the head officer of the Endowment Bureau accounting for only $244.60 of this money and showing that it was applied as follows: Balance on June, $30.70; July, $36.40; August, $36.40; September, $33.20; October, $33.20; November, $33.20; December, $33.20; January, special assessment, $8.30. This pays the local lodge up to January 1, 1928, with $29.05 to spare, so it would seem that it is not true that the local lodge was in bad standing as late as March, 1928, as is claimed by the defendant. It evidently was in arrears at all times during the year 1927 up to December 6th of that year, when the remittance of $273.65 paid them through December, 1927,

with $29.05 to go as a credit on January, 1928. But this is not important except to show the loose and irregular manner in which the Endowment Bureau receipts for and handles its funds. The evidence shows conclusively that the insured, Mariah Baker, kept her dues paid up promptly and when she died on August 22, 1927, she was paid up in full and in perfect standing with the local lodge, Mars Hill Tabernacle, No. 22. At that date it appears that the local lodge had not paid one cent to the Endowment Bureau during the year 1927 and did not pay anything until September 16, 1927, or nearly one month after the death of the insured. The defense is that this condition of affairs ipso facto suspended the local lodge and its entire membership, including the insured. There seems to be no notice required to be sent to the local lodge or its members when this suspension takes place. On the trial of the case there was filed in evidence a so-called quarterly report of the Endowment Bureau covering the months of May, June and July of 1927. This shows Mars Hill Tabernacle blank during those months and clearly indicates that the dues for those months had not been paid, and that under the by-laws the local lodge was subject to suspension. But under the law this suspension could not have been effective until due or legal notice had been given to the proper officer of the lodge and even then it could not have the effect of suspending the individual members to the extent of voiding their policies and denying the beneficiary the right to collect on them in case members who had paid all dues to the local lodge died while the lodge was under suspension. Witnesses for the defendant testify that this report is sent to all local lodges and that it constitutes the only notice of suspension ever sent to a local lodge. No notice of any kind is ever sent to the individual members so that it could easily happen that a local lodge could be duly and legally suspended while all the members were in good standing and paid up in full. Unless some provision is made to notify these individual members and to give them an opportunity to protect themselves and their policies it would be unjust and unreasonable for the Endowment Bureau to refuse to pay on a policy on which all dues had been paid to a proper officer, but who had failed and neglected to make his remittances in the time required. In this case the evidence is not convincing that this report filed herein was ever sent to or received by the local lodge or any of its officers or members. No officer or member of the lodge ever knew that it had been suspended. It is true that the officers sent several months' dues at one time, but these were always received and the lodge continued to function as usual and was never suspended so far as its meetings and work were concerned. None of the members appear to have known of the alleged suspension. The insured probably never even knew that the proper officer was holding back her dues and failing to send them to the head office each month as she paid them. She paid promptly and when she died she owed nothing. In this connection it must be remembered that the officers of the Mars Hill Tabernacle, No. 22, whose duty it was to collect and remit these dues, were under the law the agents of the Grand Lodge and of the Endowment Bureau. When the insured had paid her dues she had done all that was required of her and it was not her duty or right to pursue these funds any further.

In their brief counsel for the defendant appellant quote from 45 Corpus Juris, p. 27, as follows·

"The statutes under which a beneficial society is formed and operates, and other pertinent statutes in force at the time the

contract is entered into, the charter of incorporation or articles of association of such a society, and its constitution, by-laws, and rules, if they have been properly adopted and are not inconsistent with the terms of the certificate, or unreasonable or contrary to law, enter into and form a part of the contract of insurance evidenced by the certificate of membership, and accordingly such statutes, by-laws and rules must be looked to in determining the rights and liabilities of the parties."

The citation just quoted contains the following: "* * * if they have been properly adopted and are not inconsistent with the terms of the certificate, or unreasonable or contrary to law, * * *." To suspend a lodge for failure of its officers to remit dues that are regularly paid on them and to thus deprive a faithful member of rights already accrued in a policy and to deny the beneficiary in such case the right to recover on such a policy would be "unreasonable and contrary to law."

It is the duty of defendant to make proper provisions for the members of the local lodge who keep their dues paid up promptly. It would seem that upon a local lodge being suspended on account of the failure of its officers, who are agents of the Grand Lodge, to remit the dues as collected, each individual member whose dues are paid in full should be held in good standing as to his insurance and should be given ample notice as well as opportunity to send his dues direct to the Grand Lodge or to join another local lodge that is in good standing. Anything less than that would be unreasonable and contrary to public policy. So, although the by-laws of the defendant may provide that a beneficiary of a member whose dues are paid up promptly and in full at the time of his death will be deprived of the right to collect under the policy carried by the insured if at the time of the death of the insured the local lodge was suspended because of the failure of the officers to remit the dues collected from its members, this provision is unreasonable and contrary to law.

Counsel also cite 45 Corpus Juris, p. 92, as follows:

"The constitution and by-laws of the society sometimes provide, however, that suspension of a subordinate lodge ipso facto works a suspension of its members, and that to entitle them to benefits subsequently accruing they must apply to the society for reinstatement or transfer to another subordinate lodge. These provisions are binding on the members, and unless the prescribed conditions are complied with their right to benefits will be forfeited, although the suspension of the subordinate lodge occurred without fault on their part, and although the society has given them no notice of the suspension of the subordinate lodge."

A casual reading of this authority would seem to justify defendant's position in this case, for it plainly says, "These provisions are binding on the members, and unless the prescribed conditions are complied with, their right to benefits will be forfeited, although the suspension of the subordinate lodge occurred without fault on their part, and although the society has given them no notice * * *." The editor of Corpus Juris cites two decisions on which this statement of the law is based, as follows:

(1) Sovereign Camp, W. O. W. v. Hicks, 37 Tex. Civ. App. 424, 84 S. W. 425. This is a case where a W. O. W. camp was dissolved and the members had ample time and instructions to join another camp. The local camp was officially dissolved on February 1st. On April 23rd of the same year the insured died without having paid his dues for January, February, March or April, although everything possible had

been done to get him to transfer his membership to some other camp or to the Sovereign Camp. He did neither. While he may have received no official notice of the dissolution of the local camp, he had the knowledge and every opportunity was given him to preserve his policy. He knew that his policy was lapsed, independently of the local camp being dissolved, as he had not paid his dues and he knew that failure to pay his dues for that period of time under the rules of the order necessarily lapsed his policy. The case is not analagous to the one under consideration and no fault can be found with its conclusion.

(2) Peet v. Great Camp of the Knights of Maccabees of the World, etc., 83 Mich. 92, 47 N. W. 119. This case holds with the defendant in the case at bar on the question as to whether it is necessary for the individual members of a local lodge to receive notice of the suspension of the local lodge. While this case thus supports the position of the defendant, since the weight of authority is the other way we are unable to accept the position set forth in this case as the best expression of the law and, while the citation from Corpus Juris appears to support the position of the defendant, the sentence from the article quoted immediately following that part cited by counsel for defendant reads as follows: "But the defense that the subordinate lodge to which a member belonged had been suspended is a technical one which must be made out with literal exactness, and if the suspension is not in strict accordance with the laws of the society its members' rights are not forfeited." To support this statement of the law the editor of Corpus Juris cites District Grand Lodge No. 23, I. O. O. F., in America v. Hill, 3 Ala. App. 483, 57 So. 147, 150. In this case the Grand Lodge refused to

pay on a policy because it was alleged that the local lodge was under suspension at the time of the death of the insured. The case is very much like the one at bar. There was no clear evidence that there had been a suspension. The local lodge was slow in making remittances of the dues as collected. The dues of insured were paid up in full at the time of death and the lodge was operating, although the proper officer had not remitted the dues that insured had paid, just as was the case with the insured in the case under consideration. The Court of Appeals of Alabama, in deciding the case in favor of the beneficiary, said:

"It is insisted by appellant that appellee was not entitled to recover because Hope Lodge, of which Pines was a member, was in arrears with the District Grand Lodge at the time of Pines' death, and that his beneficiary, on that account, was not entitled to participate in its endowment fund. While appellant is a social organization engaged in the business, among other things, of furnishing a limited amount of insurance upon a professed nonremunerative basis to its members, nevertheless the purposes of its organization must not be lost sight of, and it must conduct its affairs under reasonable regulations and so enforce those regulations through its officers as to furnish at least reasonable security to its members, acting in good faith and meeting their obligations, against the negligence or inefficiency of those under whose control it places its affairs. Supreme Lodge Knights of Pythias v. Withers, 177 U. S. 260, 20 S. Ct. 611, 44 L. Ed. 762.

"The defense relied upon is an extremely technical one, and is opposed to that true sense of reason, right, and justice which should form the basis of every contract, by-law, or regulation affecting the obligations of the members of society to each other. When it is remembered that the appellant is a beneficial society, permitted by the law to exercise its various functions because of its express purpose to minister to the needs of its members when they become the subjects of

disease or misfortune and to furnish to each of them, at his death, a modest sum, in the form of life insurance, to be paid to his beneficiary, some person named by him in his certificate as the object of his care and solicitude, the hardship and oppression which would result from a rigid enforcement of the particular provision set up as a defense to this action become apparent: Such a provision could not be permitted in a life insurance policy issued by a purely business organization, and in such case such a defense could not, and would not, be tolerated. When interposed by a beneficial society—a society of benevolence—the law will certainly not permit such a defense to prevail unless it is made out with literal exactness. Supreme Lodge Knights of Pythias v. Withers, 177 U. S. 260, 20 Sup. Ct. 611, 44 L. Ed. 762."

In line with this decision, even if Mars Hill Tabernacle were in a state of suspension at the time of the death of insured, Mariah Baker, while she was fully paid up and owed nothing, even if this suspension should deny to the beneficiary her right to collect on the policy of the insured, the fact of the suspension of the said local tabernacle has not been proved with that degree of certainty that should always be required in cases of such highly technical defenses.

Counsel for defendant appellant cite Maginnis v. N. O. Cotton Exchange Mutual Aid Ass'n, 43 La. Ann. 1136, 10 So. 180. This case is not applicable. It deals with individual's suspension and non-payment of dues. Daughtry v. Knights of Pythias, 48 La. Ann. 1203, 20 So. 712, 55 Am. St. Rep. 310, is also cited. The questions therein decided can have no relevance here. Counsel also cited the case of Edwards v. Grand Order of Wise Sons, etc., 6 La. App. 693, decided by this court when one of the defendant's counsel was an honored member of the court. In a very able opinion the court in that case said:

"When money is paid to an agent duly authorized to receive it, it at once becomes the property of the principal and the debtor making the payment is fully discharged.

"Would the Grand United Order of Wise Sons and Daughters of America 'have its pie and eat it too?' "

So, when Mariah Baker paid her dues, she had done all that was required of her. The money that she had paid at once became the property of the defendant, and the failure of the proper officer of Mars Hill Tabernacle to remit the same cannot be charged against her, nor can her beneficiary be made to suffer on that account. She could not follow this money to its destination, the Endowment Bureau. The only theory under which the defendant could hope to win is that the officers of the local lodge are agents of the local members and not of the Grand Lodge, but that point was decided adversely by this court in the above-cited case:

"Under these rules of the defendant the question is to be decided whether or not the Grand Lodge can constitute the subordinate lodges its agents for the purpose of collecting and remitting the endowment and burial dues of the members and at the same time make the subordinate lodges the agents of their members and not agents of the Grand Lodge for the purpose of collecting and remitting such dues.

"In our opinion a principal cannot authorize an agent to collect money for him and at the same time make his representative the agent of his debtor for the purpose of transmitting the money to the principal."

In support of our holding that the fact of the officers of the Mars Hill Tabernacle in failing to remit the dues of Mariah Baker and others to the Endowment Bureau does not ipso facto suspend members whose dues are fully paid up and that a by-law of the order to that effect, such as is relied on by the defendant, is

unreasonable, we cite the following from 45 C. P. p. 120:

"But a by-law suspending a local lodge and all its members upon a local officer's failure to remit assessments to the supreme body, without providing for notice of forfeiture, although providing for admission into another lodge upon such forfeiture and upon repayment of dues and assessments, is unreasonable and void."

The Court of Appeal of New York has passed on this question in a well-considered opinion, Brown v. Supreme Court, I. O. O. F., 176 N. Y. 132, 68 N.E. 145, 146:

"In so far as the defendant attempted by the enactment of by-laws to make the default or misconduct of its own agent and officer the default and misconduct of the members, who had paid their dues and assessments precisely as the regulations required, its action was nugatory. No corporation can be deemed to possess the power to visit upon its members the consequences of a default in the payment of funds by its agent and officer to the extent of excluding the members from all their rights, and virtually expelling them for such reason from the organization."

We fully concur in the views expressed in the above case. The case is clear-cut and is analagous with the one under consideration here.

The plaintiff has asked for no increase in the judgment, so we do not examine or consider that part of plaintiff's petition that asks for attorney's fee, as well as a double of the amount of the face of the policy.

For the reasons assigned the judgment appealed from is affirmed, the appellant and defendant to pay all the costs of both courts.