## KNIGHTS OF PYTHIAS *v.* WITHERS.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 170.　Argued March 6, 1900. — Decided April 9, 1900.

By the rules of the beneficial or insurance branch of the Supreme Lodge Knights of Pythias, persons holding certificates of endowment or insurance were required to make their monthly payments to the Secretary of the subordinate section before the tenth day of each month ; and it was made the duty of the Secretary to forward such monthly payments at once to the Board of Control. If such dues were not received by the Board of Control on or before the last day of the month, all members of the section stood suspended and their certificates forfeited, with the right to regain their privileges if the amounts were paid within thirty days after the suspension of the section; provided, no deaths had occurred in the meantime. There was a further provision that the section should be responsible to the Board of Control for all moneys collected, and that the officers of the section should be regarded as the agents of the members, and not of the Board of Control. The insured made his payments promptly, but the Secretary of the section delayed the remittance to the Board of Control until the last day of the month, so that such remittance was not *received* until the fourth day of the following month. The insured in the meantime died. *Held:* That the Supreme Lodge having undertaken to

control the Secretary of the section by holding the section responsible for moneys collected, and requiring him to render an account and remit each month, — a matter over which the insured had no control,—he was thereby made the agent of the Supreme Lodge, and that the provision that he should be regarded as the agent of the insured was nugatory, and that the insured having made his payments promptly, his beneficiary was entitled to recover.

THIS was an action originally begun in the Circuit Court of Hale County, Alabama, by Josephine R. Withers, to recover of the defendant the amount of a certain certificate or policy of insurance upon the life of her husband.

The case was removed to the Circuit Court of the United States for the Middle District of Alabama, upon the petition of the defendant and upon the ground that the Supreme Lodge Knights of Pythias was a corporation organized by act of Congress, and hence that the controversy arose under the Constitution and laws of the United States.

The case was submitted to a jury upon an agreed statement of facts, and the court instructed a verdict for the plaintiff in the sum of three thousand dollars, the amount of the policy, with interest, upon which verdict a judgment was entered for $3392.54. The case was taken by writ of error to the Circuit Court of Appeals, which affirmed the judgment. 59 U. S. App. 177. Whereupon the defendant sued out a writ of error from this court.

The facts, so far as they are material, are stated in the opinion of the court.

*Mr. Aldis B. Browne* for plaintiff in error. *Mr. Alexander Britton* and *Mr. H. H. Field* were on his brief. *Mr. Thomas G. Jones* and *Mr. Charles P. Jones* filed a brief for same.

*Mr. Edward De Graffenried* for defendant in error.

MR. JUSTICE BROWN delivered the opinion of the court.

The Supreme Lodge Knights of Pythias is a fraternal and benevolent society, incorporated by an act of Congress of

June 29, 1894, 28 Stat. 96, as the successor of a former corporation of the same name, organized under an act approved May 5, 1870. The beneficial or insurance branch of the order is known as the endowment rank, which is composed of those members of the order who have taken out benefit certificates. Such members are admitted into local subordinate branches known as Sections. The members of each Section elect their own president and secretary. The endowment rank is governed by a Board of Control whose officers are a president and secretary, and whose place of business is in Chicago. · The endowment rank is governed by a constitution and general laws enacted by the Supreme Lodge, and by rules and regulations · adopted by the Board of Control and approved by the Supreme Lodge.

On January 1, 1883, Robert W. Withers made application for membership in the endowment rank, and in that application made the following statement: "I hereby agree that I will punctually pay all dues and assessments to which I may become liable, and that I will be governed, and this contract shall be controlled by all the laws, rules and regulations of the order governing this rank, now in force, or that may hereafter be enacted, or submit to the penalties therein contained." His application was accepted, and, after receiving a certificate under the first act of incorporation which he voluntarily surrendered, he received the certificate upon which this action is brought. This certificate recited the original application for membership dated January 1, 1883, the surrender of the former certificate and the application for transfer to the fourth class, which were " made a part of this contract, . . . and in consideration of the payment heretofore to the said endowment rank of all monthly payments, as required, *and the full compliance with all the laws governing this right, now in force or that may hereafter be enacted, and shall be in good standing under said laws,* the sum of $3000 will be paid by the Supreme Lodge, etc., to Josephine R. Withers, wife, . . . upon due notice and proof of death *and good standing in the rank at the time of his death,* . . . and it is understood and agreed that any violation of the within mentioned conditions or other

requirements of the laws *in force governing this right* shall render this certificate and all claims null and void, and the said Supreme Lodge shall not be liable for the above sum or any part thereof."

Withers was a member of Section 432, at Greensboro, Alabama, of which one Chadwick was secretary. By the laws of the endowment rank Withers was required to pay $4.90 monthly in accordance with his age and the amount of his endowment.

In January, 1894, defendant adopted and promulgated the following general laws:

"SEC. 4. Monthly payments and dues of members holding certificates of endowment shall be due and payable to the secretary of Section without notice, on the first day of each and every month; and a failure to make such payment on or before the 10th day of each month shall cause, from and after such date, a forfeiture of the certificate of endowment and all right, title and interest such member or his beneficiaries may have in and to the same, and membership shall cease absolutely. In case of such forfeiture, membership may be regained by making application in the form prescribed for new applicants, the payment of required membership fee and surrender of the forfeited certificate. If approved by the medical examiner-in-chief and accepted by the Board of Control, a new certificate shall be issued, and the rating shall hereafter be at the age of nearest birthday to the date of the last application."

"SEC. 6. The secretary of the Section shall forward to the Board of Control the monthly payments and dues collected immediately after the 10th day of each and every month.

"If such payment and dues are not received by the Board of Control on or before the last day of the same month the Section so failing to pay, and all members thereof, shall stand suspended from membership in the Endowment Rank; and their certificates and all right, title and interest therein shall be forfeited. Notice of such suspension shall be forthwith mailed by the Secretary of the Board of Control to the President and Secretary of such Section.

"Provided, that the Section whose membership has forfeited

their endowment, and whose warrant has been suspended, shall regain all right as a Section, and any surviving members thereof (not less than five) shall regain full rights and privileges held previous to such forfeiture, if within thirty days from suspension of warrant said Section shall pay to the Board of Control the amount of all monthly payments, assessments and dues accrued upon said members."

"SEC. 10. Sections of Endowment Ranks shall be responsible and liable to the Board of Control for all moneys collected by the secretary or other officers from the members for monthly payments, assessments or dues not paid over to the Board within the time and manner prescribed by law. Officers of Sections are the agents of members, and shall in no wise be considered as the agents of the representatives of the Board of Control or of the Endowment Rank or of the Supreme Lodge."

For over twelve years Withers made his monthly payments as required by law to the secretary of the Section, and the money was regularly remitted to the Board of Control at Chicago. His last payment was made prior to October 10, 1895, as required by section 4, for the dues of that month. As there were a large number of members in the Section, and as their dues were not all collected until the latter part of the month, the secretary of the Section did not send the money to the Board of Control until October 31, when he mailed to the secretary of that board a cheque covering all the amounts due by all the members of the Section for that month. The letter did not leave the post office until the next day, and was received by the Board of Control November 4. No notice was ever mailed by the Board of Control to Withers notifying him of his suspension; but on November first, as required by section six, the secretary of the Board of Control mailed to Mr. Chadwick, the secretary of the Section at Greensboro, a notice of the suspension of all members thereof, with an intimation that the members of the Section might regain their rights under certain conditions therein named. No notice was mailed to the President of the Section. In view of the technical character of the defence, it is worthy of mention that the Board of Control did not strictly comply with its own regulation in this particular.

Upon receiving the remittance, and on November 4, the secretary of the Board of Control mailed the following postal card to the secretary of the Section: "Office Board of Control, Chicago, November 4, 1895. Received of Section No. 432 one hundred and thirteen 30–100 dollars in payment of monthly payments and dues for October, 1895, on condition that all members for whom above payment is made were living at date of this receipt. H. B. Stolte, Secretary Board of Control."

The insured was suddenly taken ill and died of an attack of cholera morbus on November 1, 1895. Proofs of death were waived by the defendant, which, however, refused to pay the amount of the certificate.

It is hardly necessary to say that the defence in this case is an extremely technical one, and does not commend itself to the average sense of justice. It ought to be made out with literal exactness. It is admitted that Withers for twelve years paid all his dues promptly to the secretary of the Section as required by section 4 of the general laws, and that the failure of the Board of Control to receive them on or before the last day of the month was the fault of the secretary, and not of the insured. The whole defence rests upon the final clause of section 10, declaring that "officers of Sections are the agents of the members and shall in nowise be considered as the agents of the representatives of the Board of Control of the endowment rank or of the Supreme Lodge." It appears to have been the habit of the secretary, Mr. Chadwick, not to remit each payment as it was made, but to allow all the dues of each month to collect in his hands and to remit them together by a cheque covering the whole amount, about the close of the month. In this connection he makes the following statement: "It had never been the custom of my office for me to send the money off by the twentieth of the month," (although section 6 required him to forward it immediately after the tenth.) "I usually sent the money off about the last days of the month. For the previous year I had mailed to the secretary of the Board of Control the dues of the Section as follows: October 27, 1894, November 28, 1894, December 29, 1894, January 29, 1895, February 27, 1895, March 30, 1895, April 29, 1895, June 29, 1895, July 8, 1895,

August 29, 1895, September 28, 1895, October 28, 1895, October 31, 1895—all of which sums were accepted by the Board of Control."

The position now taken by the defendant, that in receiving the money from the insured members, and remitting the same to the Board of Control, the secretary of the Section was the agent of the insured and not of the Board of Control, is inconsistent with the requirement of section 4, which makes it obligatory upon policyholders to pay their monthly dues to the secretary of the Section, and to him only, as well as with the provision of section 10, that " Sections of endowment rank shall be responsible and liable to the Board of Control for all moneys collected by the secretary, or other officers, from the members for monthly payments, assessments or dues not paid over to the board within the time and manner prescribed by law." · The question at once suggests itself to whom does the money belong when paid to the secretary of the Section ? If to the insured, it was within his power to reclaim it at any time before it was remitted. If to the Board of Control, it was the duty of the secretary of the Section to remit it. Why, too, should the Board of Control attempt to deal with it at all beyond requiring it to be paid them by a certain day ? Section 10 is a complete answer, since that makes the Sections responsible to the Board of Control from the moment the money is collected, and section 6 makes it the duty of the secretary to remit it at once.

There seems to have been an attempt on the part of the defendant to invest Mr. Chadwick with the power and authority of an agent, and at the same time to repudiate his agency. But the refusal to acknowledge him as agent does not make him the less so, if the principal assume to control his conduct. It is as if a creditor should instruct his debtor to pay his claim to a third person, and at the same time declare that such third person was not his agent to receive the money. It would scarcely be contended, however, that such payment would not be a good discharge of the debt, though the third person never accounted to the creditor; much less, that it would not be a good payment as of a certain day, though the

remittance, through the fault of the person receiving it, did not reach the creditor until the following day.

The position of the secretary must be determined by his actual power and authority, and not by the name which.the defendant chooses to give him. To invest him with the duties of an agent, and to deny his agency, is a mere juggling with words. Defendant cannot thus play fast and loose with its own subordinates. Upon its theory the policyholders had absolutely no protection. They were bound to make their monthly payments to the secretary of the Section, who was bound to remit them to the Board of Control; but they could not compel him to remit, and were thus completely at his mercy. If he chose to play into the hands of the company, it was possible for him, by delaying his remittance until after the end of the month, to cause a suspension of every certificate within his jurisdiction; and in case such remittance was not made within thirty days from such suspension (sec. 6) apparently to make it necessary under section 4 for each policyholder to regain his membership by making a new application, surrendering his forfeited certificate, making payment of the required membership fee, undergoing a new medical examination,.and paying a premium determined by his age at the date of the last application. In other words, by the failure of the secretary, over whom he had no control, to remit within thirty days every member of the Section might lose his rights under his certificate and stand in the position of one making a new application, with a forfeiture of all premiums previously paid. The new certificate would, of course, be refused if his health in the meantime had deteriorated, and the examining physician refused to approve his application. This would enable the company at its will to relieve itself of the burdens of undesirable risks by refusing certificates of membership to all whose health had become impaired since the original certificate was taken out, though such certificate-holder may have been personally. prompt in making his monthly payments.

It could not thus clothe the secretaries of the Sections with the powers of agents by authorizing them to receive monthly payments and instructing them to account for and remit them to

the Supreme Lodge at Chicago, and in the same breath deny that they were agents at all. The very definition of an agent, given by Bouvier, as "one who undertakes to transact some business, or manage some affair, for another, by the authority and on account of the latter, and to render an account of it," presupposes that the acts done by the agent shall be done in the interest of the principal, and that he shall receive his instructions from him. In this case the agent received his instructions from the Supreme Lodge, and his actions were, at least, as much for the convenience of the Lodge as for that of the insured. If the Supreme Lodge intrusted Chadwick with a certain authority, it stands in no position to deny that he was its agent within the scope of that authority.

The reports are by no means barren of cases turning upon the proper construction of this so-called "agency clause," under which the defendant seeks to shift its responsibility upon the insured for the neglect of Chadwick to remit on the proper day. In some jurisdictions it is held to be practically void and of no effect; in others, it is looked upon as a species of wild animal, lying in wait and ready to spring upon the unwary policyholder, and in all, it is eyed with suspicion and construed with great strictness. We think it should not be given effect when manifestly contrary to the facts of the case, or opposed to the interests of justice. Wherever the agency clause is inconsistent with the other clauses of the policy, conferring power and authority upon the agent, he is treated as the agent of the company rather than of the policyholder. The object of the clause in most cases is to transfer the responsibility for his acts from the party to whom it properly belongs, to one who generally has no knowledge of its existence. It is usually introduced into policies in connection with the application, and for the purpose of making the agent of the company the agent of the party making the application, with respect to the statements therein contained.

It was formerly held in New York in *Rohrbach* v. *Germania Fire Ins. Co.*, 62 N. Y. 47, and *Alexander* v. *Germania Fire Ins. Co.*, 66 N. Y. 464, that, where the insured had contracted that the person who had procured the insurance should be deemed his agent, he must abide by his agreement; and where

such person had, through fault or mistake, misstated in the application to the company the declarations of the assured, the latter must suffer for the error or wrong; but in a subsequent case, *Whited* v. *Germania Fire Ins. Co.*, 76 N. Y. 415, this doctrine was held to be limited to such acts as the agent performed in connection with the original application, and that in a renewal of the policy such party was treated as the agent of the defendant, for whose acts it was bound; and that it was within his power to make a valid waiver of the conditions of the policy. Said the court in its opinion : "That he was the agent of the defendant it would be fatuous to deny; were it not for a clause in the policy" (the agency clause) "upon which the defendant builds. . . . But if the insured is to be now bound as having thus contracted, there must be mutuality in the contract. No man can serve two masters. If the procurer of the insurance is to be deemed the agent of the insured . . . he may not be taken into the service of the insurer as its agent also; or if he is so taken, the insurer must be bound by his acts and words, when he stands in its place and moves and speaks as one having authority from it; and *pro hac vice*, at least, he does then rightfully put off his agency for the insured and put on that for the insurer. . . . Nor will it hold the plaintiff so strictly to the contract he made as to permit the defendant to ignore it and take his agent as its agent, and yet make him suffer for all the shortcomings of that person while acting between them and while under authority from the defendant to act for it." So in *Sprague* v. *Holland Purchase Ins. Co.*, 69 N. Y. 128, the insured signed a blank form of application, which was filled up by the company's agent without any knowledge or dictation of the insured. There were false statements therein, occasioned by the mistake or inadvertence of the agent. The policy contained the agency clause, as well as the condition that the application must be made out by the defendant's authorized agent, and it was held, using the language of the court in the *Whited case*, that the latter clause "swallowed down" the former, and that there was no warranty binding upon the plaintiff.

In *Patridge* v. *Commercial Fire Ins. Co.*, 17 Hun, 95, it was said of the agency clause; "This is a provision which deserves

the condemnation of courts, whenever it is relied upon to work out a fraud, as it is in this case. The policy might as well say that the president of the company should be deemed the agent of the assured. . . . Such a clause is no part of a contract. It is an attempt to reverse the law of agency, and to declare that a party is not bound by his agent's acts. Whether one is an agent of another is a question of mixed law and fact, depending on the authority given expressly or impliedly. When a contract is, *in fact*, made through the agent of a party, the acts of that agent in that respect are binding on his principal."

In *Nassauer* v. *Susquehanna Ins. Co.*, 109 Penn. St. 507, 509, under a by-law providing that "in all cases the person forwarding applications shall be deemed the agent of the applicant," it was held, under the circumstances of the case, that the agent of the company soliciting insurance was not the agent of the applicant, and that such by-law was not binding upon him. Although the insured is supposed to know at his peril the conditions of the policy, that will not bind him to a provision which is not true, and one which the company had no right to insert therein. "We do not assent," said the court, "to the proposition that the offer" (that the agent made his own valuation of the property) "was incompetent, because Laubach was the agent of the assured in filling up the application and forwarding it to the company. He was not the agent of the assured. The latter had not employed him for any purpose. He was the agent of the defendant company, and as such called upon the assured and solicited a policy, and having obtained his consent, proceeded to fill up the application for him to sign. As to all these preliminary matters the person soliciting the insurance is the agent of the company." The court, speaking of the agency clause, observed : " This court, in the case above cited, *Columbia Ins. Co.* v. *Cooper*, 50 Penn. St. 331, characterized a somewhat similar provision as a 'cunning condition.' The court might have gone further and designated it as a dishonest condition. It was the assertion of a falsehood, and an attempt to put that falsehood into the mouth of the assured. It formed no part of the contract of insurance. That contract consists of the application and the policy issued in pursuance thereof. In point of

fact the assured does not see the policy until after it is executed and delivered to him.   In many instances it is laid away by him and never read, especially as to the elaborate conditions in fine print.   Grant that it is his duty to read it, his neglect to do so can bind him only for what the company had a right to insert therein.   He was not bound to suppose that the company would falsely assert, either by direct language in the policy or by reference to a by-law, that a man was his agent who had never been his agent, but who was on the contrary the agent of the company.   Notwithstanding this was a mutual company, the assured did not become a member thereof until after the insurance was effected.   Hence a by-law of the company of which he had no knowledge, and by which he was bound, could not affect him in matters occurring before the granting of the policy. And even a by-law of a mutual company which declares that black is white does not necessarily make it so." Similar cases are those of *Eilenberger* v. *Protective Ins. Co.,* 89 Penn. St. 464; *Susquehanna &c., Ins. Co.* v. *Cusick,* 109 Penn. St. 157; and *Kister* v. *Lebanon Ins. Co.,* 128 Penn. St. 553.

The case of *Lycoming &c., Ins. Co.* v. *Ward,* 90 Illinois, 545, resembles the case under consideration.   In that case it was held that, where the assured contracts with one as the agent of the insurer, believing him to be such, and does not employ such supposed agent to act for him in obtaining insurance, such person has no power to act for or bind the insured, though the policy may provide that the person procuring the insurance shall be deemed the agent of the insured, and not of the company. Plaintiff paid the premium to the person with whom she contracted for the insurance, and of whom she obtained the policy. It was held that such person, assuming to be the agent of the company, the payment was binding upon the company, whether he paid the money over or not.   In that case the person to whom the money was paid was not in reality an agent of the company, although plaintiff believed him to be such, but only a street insurance broker, who represented himself to be the agent of the company.   Said the court: "Under such circumstances who should bear the loss arising from the fraud committed by the street broker?   Should it fall upon the plaintiff, who was

an innocent party in the transaction, or should it fall upon the company, who alone enabled Puschman to successfully consummate the contract of insurance by placing in his hands the policy for delivery? The street broker was not the agent of the plaintiff for any purpose. If the evidence be true, he had no authority to act for her or bind her in any manner whatever by what he might do in the premises, and while he may not have been, in fact, the agent of the company, still the company, by placing the policy in the hands of the street broker for delivery, is estopped from claiming that the payment made to him upon delivery of the policy is not binding upon the company."

In Indiana it is also held that a recital in the policy that the broker obtaining an insurance is the agent of the insured is not conclusive upon that subject. *Indiana Ins. Co.* v. *Hartwell*, 100 Indiana, 566. In *North British &c., Ins. Co.* v. *Crutchfield*, 108 Indiana, 518, the agency clause was held to be absolutely void as applied to a local agent, upon whose counter signature the validity of the policy, by its terms, was made to depend.

In *Boetcher* v. *Hawkeye Ins. Co.*, 47 Iowa, 253, it was held that, if the assured had the right to believe the soliciting agent was the agent of the company, the insertion of a clause in the policy providing that he was the agent of the assured constituted a fraud upon the latter, of which the company could not take advantage.

Speaking of the agency clause in *Continental Ins. Co.* v. *Pearce*, 39 Kansas, 396, 401, it is said: "This is but a form of words to attempt to create on paper an agency, which in fact never existed. It is an attempt of the company, not to restrict the powers of its own agent, but an effort to do away with that relation altogether by mere words, and to make him in the same manner the agent of the assured, when, in fact, such relation never existed. We do not believe the entire nature and order of this well established relation can be so completely subverted by this ingenious device of words. The real fact, as it existed, cannot be hidden in this manner; much less can it be destroyed and something that did not in reality exist be placed in its stead. The substance is superior to the mere drapery of words with which one party wishes to bring into existence and clothe an

unreal authority." See also *Kausal* v. *Minnesota &c., Ins. Asso.,* 31 Minnesota, 17, in which the act of an insurance agent in making out an incorrect application was held chargeable to the insurer, and not to the insured, notwithstanding the insertion of an agency clause in the policy.

In *Planters' &c., Ins. Co.* v. *Myers,* 55 Mississippi, 479, 498, 506, an agency clause in a policy of insurance was held to be void, as involving a legal contradiction. The applicant made truthful answers to certain interrogatories propounded by the agent, who stated certain things that were not true. They were held not to be binding upon the insured. Speaking of the agency clause, it is said : " The verbiage of this condition is not candid ; it seems to have been used with studied design to' obscure the real purpose. It is a snare, set in an obscure place, well calculated to escape notice. It is not written or printed on the face of the policy. It is not so much as alluded to in the application ; nor is the agent in his printed instructions enjoined to inform those with whom he treats of it. . . . Its inevitable effect is to greatly weaken the indemnity on which the assured relied. It is inconsistent with the acts and conduct of the insurance companies in sending abroad all over the land their agents and representatives to canvass for risks. It is an effort by covenant to get the benefits and profits which these agents bring them, and at the same time repudiate the relation they sustain to them ; and to set up that relationship with the assured, and that, too, without their knowledge and consent. It is not a limitation or restriction of power, but the dissolution of the relationship with themselves and the establishment of it between other parties."

The case of *Schunck* v. *Gegenseitiger Wittwen und Waisen Fond,* 44 Wisconsin, 369, is almost precisely like the instant case. The constitution of the defendant corporation, whose governing body or directory was elected by the several "groves," (corresponding to the sections in this case,) of the United Ancient Order of Druids, declared that every member whose assessment was not paid by his grove to the directory within thirty days after demand made, forfeited his claim to have a certain sum in the nature of life insurance paid to his widow, or heirs,

after his death. It was held that, in view of all the provisions of such constitution, the benevolent object of the corporation, and the fact that the several groves are, at least, as much its agents to collect and pay over the dues of their members, as they are agents of the latter, in case of a member whose dues have been fully paid to his grove at the time of his death, the amount of insurance might be recovered, notwithstanding a default of the grove in paying over such dues to the defendant.

The agency clause was also once before this court in the case of *Grace* v. *American Central Ins. Co.*, 109 U. S. 278, in which a clause in the policy that the person procuring the insurance to be taken should be deemed the agent of the assured and not of the company, was held to import nothing more than that the person obtaining the insurance was to be deemed the agent of the insured in the matters immediately connected with the procurement of the policy, and that where his employment did not extend beyond the procurement of the insurance, his agency ceased upon the execution of the policy, and subsequent notice to him of its termination by the company was not notice to the insured.

In the following cases the officers of the subordinate lodge, or conclave, were treated as the agents of the Supreme Conclave in the matter of granting extensions of time for the payment of assessments: *Whiteside* v. *Supreme Conclave*, 82 Fed. Rep. 275; *Knights of Pythias* v. *Bridges*, 39 S. W. Rep. (Tex.) 333.

In the case under consideration it may be immaterial, except as bearing upon the equities of the case, that the agency clause was introduced into the general laws of the order in January, 1894, eleven years after the first certificate was issued to the assured, and nearly nine years after the certificate was issued upon which suit was brought. There is no evidence that it was ever called to Withers' attention, or that he had actual knowledge of it. If he were bound at all, it could only be by the stipulation in his original application, and by the terms of his certificate that "he would be bound by the rules and regulations of the order, now in force or that may hereafter be enacted." All that is required of him is a full compliance with such laws, and there is not the slightest evidence that he failed

personally in any particular to comply with any laws of the order, present or future. The only failure was that of the secretary of the Section, who, to say the least, was as much the agent of the order as he was of Withers, although the latter is sought to be charged with his dereliction by a clause inserted in the general laws, long after the certificate was issued. The decisive consideration is this: Chadwick was the agent of the defendant, and of the defendant only, after the receipt of the money from Withers. Under section 10 he then became responsible for it to the Board of Control. In rendering his monthly accounts and paying over the money he acted solely for the defendant. From the time he paid the money to Chadwick the insured had no control over him, and was not interested in its disposition. Unless we are to hold the insured responsible for a default of this agent, which he could not possibly prevent, we are bound to say that his payment to this agent discharged his full obligation to the defendant. That it should have the power of declaring that the default of Chadwick, by so much as one day, (and it did not exceed four days in this case,) to pay over this money, should cause a forfeiture of every certificate within his jurisdiction, is a practical injustice too gross to be tolerated.

Without indorsing everything that is said in the cases above cited, we should be running counter to an overwhelming weight of authority, were we to hold that the agency clause should be given full effect regardless of other clauses in the certificate or the by-laws, indicative of an intention to make the officers of subordinate lodges agents of the supreme or central authority. We should rather seek to avoid as far as possible any injustice arising from a too literal interpretation, and only give the clause such effect as is consistent with the other by-laws and with the manifest equities of the case. We are, therefore, of opinion that in this case the secretary of the Section was in reality the agent of the Supreme Lodge from the time he received the monthly payments, and that the insured was not responsible for his failure to remit immediately after the tenth of the month.

We have not overlooked in this connection the case of *Camp-*

*bell* v. *Knights of Pythias*, 168 Mass. 397, in which a different conclusion was reached upon a similar state of facts. In that case plaintiff put his right to recover upon the theory that the mailing of the remittance was a compliance with the requirement of section six that such payments and dues should be *received* on or before the last day of the month. This position was held by the court to be untenable. It was said that the money must have been actually *received* at the office of the Board of Control before the end of the month. The question of agency was not considered, and the trend of the argument is so different that the case cannot be considered an authority upon the propositions here discussed. The cases of *Peet* v. *Knights of Maccabees*, 83 Michigan, 92, and *McClure* v. *Supreme Lodge,* 59 N. Y. Sup. 764, are not in point.

The judgments of the Circuit Court and of the Court of Appeals were right, and they are therefore

*Affirmed.*