BARBARA E. COLLVER v. MODERN WOODMEN OF AMERICA, Appellant.

**Insurance:** STIPULATIONS AGAINST LIABILITY: EVIDENCE: DIRECTION OF VERDICT.   Where an insured contracted that there should be no

liability if death resulted directly or indirectly from the use of intoxicating liquor, which agreement he was competent to make, and there was evidence that would justify a finding that death was caused by intoxication, it was error to direct a verdict for the insured.

**Same:** STIPULATIONS: CONCLUSIVENESS. Where an insured contracted that the statements made in his application should be treated as strict warranties, which if untrue should invalidate the insurance, his beneficiary is bound thereby and can not question the validity of the statements so made.

**Same.** The warranty in an application for insurance that the insured had totally abstained from the use of liquor for a certain period is broken by the fact of his intoxication within that time; as the warranty can not be construed to mean merely that he had abstained from the intemperate use of liquor.

**Same:** BY-LAWS: STIPULATIONS AS TO POWER OF AGENTS: WAIVER. The local organizations of fraternal insurance companies, through which their membership is determined and which collect all dues for the general organization, are the agents in fact of the latter organization and it can not deny the legal effect of the acts of the local organization and its chief officers in performing the duties of the agency, so as to relieve it of responsibility therefor. So that where an insured's use of liquor, a breach of a strict warranty in his contract, was known to the chief officers of the local camp, as in this case, and they continued to receive assessments and forward them to the head camp, a by-law providing that such officers were the agents of the local camp and not of the head camp and that they had no power to waive any right, did not relieve the society from the consequences of their acts in so doing; since their agency was one in fact such provision could not destroy its existence or legal effect.

**Same.** The waiver in this case was that of the defendant organization itself, through its own agents, and the provisions of the by-laws above referred to do not relate to waiver by its own acts, or to a waiver implied by law from a given state of facts.

*Appeal from Calhoun District Court.*—HON. Z. A. CHURCH, Judge.

THURSDAY, MARCH 14, 1912.

SUIT on a fraternal beneficiary certificate. There was

a directed verdict for the plaintiff and a judgment thereon. The defendant appeals.—*Reversed.*

*Truman Plantz, Geo. G. Perrin,* and *J. F. Lavender,* for appellant.

*Hutchinson & Jacobs,* for appellee.

SHERWIN, J.—This is a suit on a benefit certificate issued to Lewis Collver May 16, 1906. He died in October, 1908. The evidence tended to show that Collver was intoxicated when he died and that his intoxication was the cause of his death. The defendant's answer alleged as complete defenses that Collver became intemperate in the use of intoxicating liquor after the certificate had been issued to him; that his death resulted indirectly from his intemperate use of intoxicating liquor; and that there were breaches of warranties made in Collver's application. In her reply the plaintiff denied generally anl alleged that the defendant knew of the habits of Collver with respect to the use of intoxicating liquor and that with such notice the defendant collected dues and assessments from him, and by so doing waived objection to his use of intoxicating liquor. Section 14 of the appellant's by-laws is as follows: "If any member of this society, heretofore or hereafter adopted, shall become intemperate in the use of intoxicating liquors or in the use of drugs or narcotics or if his death shall result directly or indirectly from his intemperate use of intoxicating liquors, drugs or narcotics, then the benefit certificate held by said Neighbor shall by such acts become and be absolutely null and void, and all payments made thereon shall be thereby forfeited." Section 5 of the benefit certificate also provides that it shall become absolutely null and void if the member become intemperate in the use of intoxicating liquor, or if his death shall

result directly or indirectly from the use of intoxicating liquor.

I.   Collver contracted that there should be no liability on the certificate issued to him if his death resulted directly or indirectly from the use of intoxicating liquor, and, there being evidence before the jury which would have justified a finding that his death was caused by intoxication, it was error to direct a verdict for the plaintiff.  *Ury v. Modern Woodmen of America,* 149 Iowa, 706.

*1. INSURANCE: stipulations against liability: evidence: direction of verdict.*

In his application for membership, Collver stated that he was a total abstainer from the use of intoxicating liquor; that he had been a total abstainer for four years; and that he had not been intoxicated for four years.  He warranted his answers to be literally true, and agreed that if any answer was not literally true the certificate should be void. The certificate issued to Collver was also signed by him and it provided on the same subject as follows: "This benefit certificate is issued and accepted only upon the following express warranties, conditions and agreements:  That the application for membership in this society made by said member, a copy of which is hereto attached and made a part hereof, . . . is true in all respects, and that the literal truth of such application and each and every part thereof shall be held to be a strict warranty and to form the only basis of the liability of this society to such member and to his beneficiary. . . . That if said application shall not be literally true in each and every part thereof, then this benefit certificate shall . . . be absolutely void."

The uncontradicted evidence shows that Collver was intoxicated in July, 1904, less than two years before the application was made and the certificate issued, and the appellant claims that the statements by Collver that he abstained entirely from the use of intoxicating liquor and had so abstained from its use for four years was false and

avoided the certificate.   Collver was competent to make
the exact contract that we have set out, and his beneficiary
is bound by the terms thereof.   The defendant might also
lawfully require true answers to all of the questions asked
him and refuse to insure him except upon condition that
he disclose the true facts relative to his use of intoxicating
liquor, and the length of time he had been a total abstainer.

II.   After having contracted that his statements and
disclosures should be strict warranties, which, if not true,
should invalidate the certificate, his beneficiary cannot ques-
tion the materiality of the answers.   *Ross
v. Brotherhood*, 120 Iowa, 692; *Provident
Society v. Dees*, 120 Ky. 285 (86 S. W.
522); *Spence v. Insurance Co.*, 236 Ill. 444 (86 N. E. 104,
19 L. R. A. (N. S.) 88); *National Union v. Arnhorst*,
74 Ill. App. 482; *Baumgart v. M. W. of A.*, 85 Wis. 546
(55 N. W. 713); *New York Life Ins. Co. v. Fletcher*, 117
U. S. 519 (6 Sup. Ct. 837, 29 L. Ed. 934); *Goddard v.
Insurance Co.*, 108 Mass. 56 (11 Am. Rep. 307); *Richard-
son v. Maine Ins. Co.*, 46 Me. 394 (74 Am. Dec. 459).

*2. SAME: stipulations: conclusive- ness.*

If it was true, then, that Collver was intoxicated in
July, 1904, his statement that he had totally abstained
from the use of intoxicating liquor for four years was false
and a breach of his warranty.   The answer
cannot, in our judgement, be construed to
mean that he had abstained from the intemperate use of
liquor as urged by the appellee.   The plain intent of the
questions was to ascertain whether Collver used liquor at
all, and, if he did not, how long he had so abstained.
There is nothing in *Ury v. M. W. of A., supra,* contrary to
the view expressed above.   The evidence tended to show
that Collver was intemperate in the use of intoxicating
liquor for about two years before his death.

*3. SAME.*

The evidence also showed that such use of liquor was
known to the head officer of the local camp and to some
extent, at least, to the clerk of the camp.   Notwithstanding

such knowledge on the part of the officers, the clerk of

the local camp continued to receive dues

and assessments from the insured and sent

them to the defendant. The appellee contends

that the defendant waived any objection

to Collver's use of liquor by receiving assessments and dues
with knowledge of his habits. The rule contended for by
appellee would undoubtedly be applicable but for the fact
that the contract before us contains provisions which have
not heretofore been considered by us in discussing the ques-
tion of waiver in similar cases. The cases of our own
relied upon by the appellee are *Alexander v. Grand Lodge,*
119 Iowa, 519; *Trotter v. Grand Lodge,* 132 Iowa, 513.

The by-laws in force when the insured became a mem-
ber provided as follows: "No local camp nor any officer
thereof shall have the right or power to waive any of the
provisions of the by-laws of this society. The clerk of a
local camp is hereby made and declared to be the agent
of such camp, and not the agent of the head camp, and no
act or omission on his part shall have the effect of creating
a liability on the part of this society or of waiving any
right or immunity belonging to it."

Does the stipulation that the clerk of the local camp
shall be the agent of said camp only, and not the agent of
the head camp, relieve the defendant from the consequences
ordinarily following knowledge on the part of the local
camp? We are of the opinion that this question must be
answered in the negative. The defendant is an insurance
order, consisting wholly of local camps. Its membership
is obtained solely and entirely through these local camps,
or lodges, and the defendant itself is only the instrument
through which its constituent members are enabled to co-
operate for the common good. The local lodge is the
working arm of the organization, and through it alone does
the member ever come into touch with the order at large.
It selects the membership of the order and, in a sense,

*Margin note: 4. SAME: by-laws: stipu-lations as to powers of agents: waiver.*

determines who its beneficiaries shall be.  It is a constituent
part of the general organization and is therefore vitally
interested in the conduct of its affairs and in the rejection
of proposed members and the exclusion of members, who
are incapacitated from continuing as such because of their
habits or conduct.   The local camp is the instrument
through which the resources of the general organization are
gathered and through which the discipline necessary for the
general good is exercised, and, without its agency and co-
operation, the general organization could not exist in its
present form.  It is therefore apparent that the local camp
or lodge is in fact an agent of the general organization,
and, where such is the case, the weight of authority is that
a denial of the legal effect of the acts and omissions of
such agent in performing the duties of the agency will not
relieve the general organization from responsibility there-
for.   Where an agency actually exists, the party creating
it cannot destroy its effect by a stipulation that it does not
exist.  Here the stipulation was that the clerk of the local
camp should be considered the agent of such camp only,
and not the agent of the head camp.  But the local camp
was clearly the agent of the head camp, and, as the local
camp could only act through its clerk, the act of its clerk
was its own act, and hence the act of the defendant, its
principal.  *In Supreme Lodge v. Withers,* 177 U. S. 260
(20 Sup. Ct. 611, 44 L. Ed. 762), the supreme lodge
denied the agency of the local lodge because of a stipula-
tion similar to the one in question here.  There the clerk
had failed to forward a payment made by the member.
The court said: "There seems to have been an attempt on
the part of the defendant to invest Mr. Chadwick (the local
officer) with the power and authority of an agent, and
at the same time repudiate his agency.  But the refusal
to acknowledge him as an agent does not make him the less
so if the principal assumes to control his conduct.  It is
as if a creditor should instruct his debtor to pay his claim

to a third person and at the same time declare that such third person was not his agent to receive the money. The position of the secretary must be determined by his actual power and authority, and not by the name which the defendant chooses to give him. To invest him with the duties of an agent and deny his agency is a mere juggling with words. The defendant cannot thus play fast and loose with its own subordinates. . . . We think it should not be given effect, when manifestly contrary to the facts in the case and opposed to the interests of justice." The same question was before the court in *Partridge v. Insurance Co.*, 17 Hun (N. Y.) 95, where it was said: "Such a clause is no part of the contract. It is an attempt to reverse the law of agency and say that a party is not bound by his agent's acts." See, also, *Schunck v. Fond,* 44 Wis. 369; *Winter v. Lodge,* 96 Mo. App. 14 (69 S. W. 662); *Wagner v. Knights,* 128 Mich. 660 (87 N. W. 903); *Insurance Co. v. Wilkinson,* 13 Wall. 222 (20 L. Ed. 617).

That in organizations of this kind the local camps or lodges and their officers are the agents of the central body is well settled by this and other courts. *Alexander v. Grand Lodge, supra; Trotter v. Grand Lodge, supra; Bailey v. Association,* 71 Iowa, 689; *Tobin v. Aid Society,* 72 Iowa, 262; *Ancient Order v. Drake,* 66 Kan. 538 (72 Pac. 239); *Supreme Lodge v. Withers, supra;* 3 Colley's Briefs, 2373.

In *Pringle v. Modern Woodmen,* 76 Neb. 384 (107 N. W. 756), the contract provided that it should become void if the member was thereafter convicted of a felony. A member was so convicted; but, after arrest and before conviction, he deposited with the clerk of the local camp a sum of money to be applied on future assessments. The fact of his conviction was known to the local camp and its officers, but, notwithstanding this, they forwarded the assessments to the head camp, where the money was retained by

the head camp until after the member's death, when it was tendered back to his family and the tender refused. It was held that forfeiture had been waived, the court saying, "It is the duty of an agent to communicate to his principal every fact effecting the transaction intrusted to his care which comes to his knowlege, · in the course of or during its performance, and this duty, in an action between the principal and the adverse party, the agent is conclusively presumed to have obeyed, except when, in extreme cases, it is shown that the agent with knowledge of the opposite party has repudiated his agency or has acted fraudulently."

The stipulation that no local camp nor any officer thereof shall have power to waive any of the provisions of the by-laws is not in any way controlling, for the reason that neither the local camp nor its officers attempted to make such waiver. The waiver here was that of the defendant itself with full knowledge of all the facts, while the clause in question simply withholds from the agent the power to expressly change or modify the contract, and does not relate to waiver by the acts of the defendant itself, or to a waiver implied by law from a given state of facts. *Bennett v. Insurance Co.*, 203 Ill. 439 (67 N. E. 971); *Woodman v. Colman*, 68 Neb. 660 (94 N. W. 818).

5. SAME.

We reach the conclusion that the defendant waived the conditions of the certificate, relative to Collver's use of intoxicating liquor, after its issue. For the reasons already stated, however, the case must be reversed, and it is so ordered.—*Reversed*.