FERRAND *v.* FRATERNAL RESERVE ASSOCIATION.

1. INSURANCE—BENEFICIAL ASSOCIATIONS—DISAPPEARANCE OF ASSURED—PRESUMPTION OF DEATH OF ASSURED—STATUTES.

Evidence that assured in a beneficiary association left his home in Michigan, went to the State of Washington, and from there started for Alaska, but in over seven years had not been heard from, although persistent effort to locate him had been made, *held*, to justify the conclusion of the trial court that, under 1 Comp. Laws 1915, § 329, assured is presumed to be dead.

2. SAME—PAYMENT OF ASSESSMENTS—EVIDENCE—SUFFICIENCY.

Testimony by assured's mother that she made payment of assessments to defendant's local secretary when they were due, *held*, to justify the conclusion of the trial court that the payment of the assessments was timely made.

3. SAME—CERTIFICATE OF HEALTH—ESTOPPEL.

Where the payment of assessments was timely made, and therefore no certificate of good health was required, the fact that assured's mother signed same at the request of defendant's local secretary to cover up his neglect in failing to remit the assessments to the supreme secretary within the time fixed by the rules of the order would not bar an action by the beneficiaries on the policy.

4. SAME — FORWARDING ASSESSMENTS — BY-LAWS—PRINCIPAL AND AGENT.

Where assured's mother made timely payment of assessments to defendant's local secretary, she did all she was bound to do, and defendant must suffer the consequences of irregularities in the handling of these assessments or in neglecting to forward them to the supreme secretary, notwithstanding a provision in the by-laws making local secretaries the agents of the members and not of defendant.

5. SAME—DISAPPEARANCE OF ASSURED—NOTICE—ESTOPPEL.

Where, after assured's disappearance, his mother notified the officers of the local lodge and invoked their aid to

On effect of presumption of death from absence upon payment of life insurance premiums, filing proofs, and operation of statute of limitations, see note in L. R. A. 1918B, 93.

find him, defendant is estopped to deny liability on the ground that it received payment of dues and assessments in ignorance of assured's disappearance.

Error to Kent; Brown (William B.), J. Submitted October 7, 1921. (Docket No. 58.) Decided March 30, 1922.

Assumpsit by Charles L. Ferrand and another against the Fraternal Reserve Association for the amount of a benefit certificate. Judgment for plaintiffs. Defendant brings error. Affirmed.

*Samuel H. Rhoads* (*E. R. Hicks*, of counsel), for appellant.

*Elvin Swarthout*, for appellees.

BIRD, J. Defendant is a fraternal insurance association, having a system of lodges. It is incorporated under the laws of Wisconsin. Its home office is in Oshkosh. In 1911 the company was operating in this State. On March 20, 1911, one Leslie C. Ferrand was initiated into the order in the city of Grand Rapids and was given a certificate of membership in which the defendant agreed to pay to plaintiffs, as beneficiaries, the sum of 71/100 of $1,000 in the event of the death of the insured. The monthly assessment was 60 cents. Soon after being initiated into the order Leslie C. Ferrand left his home in Grand Rapids, advising his parents that he was going to the State of Washington to seek employment and would probably be gone for two years. He went to Seattle and resided with an aunt for a time. He left there in July, 1911, informing his aunt that he was going to Alaska, and giving her a dollar to forward his trunk when he determined where he would locate. Since that time he has neither been seen nor heard from by

his relatives.    The mother paid all of his dues and assessments during his absence.    After an absence of seven years, proof of death, by statutory presumption, was made and payment demanded.    This was refused and plaintiffs brought this suit and recovered the amount due on the policy.    The case was heard by the court.    Defendant now raises in this court several questions for our consideration.

1. The contention is made that the proofs failed to make a case under 1 Comp. Laws 1915, § 329.    This section provides in part:

"If any person shall disappear and his whereabouts remain unknown for the space of seven years, and no knowledge of such person can be procured for such space of seven years, he shall be presumed to be dead."
*    *    *

The proofs show that after Leslie went west he wrote to his parents and relatives in Michigan, but after he left Seattle for Alaska nothing has been heard from him.    It was shown that efforts had been made by the family to locate him.    Inquiries had been made of the relatives, but no information as to his whereabouts was obtained.    The mother was persistent in her efforts to locate him.    She not only made inquiries of the relatives, but she applied to defendant to assist her in locating him through the lodges in the west.    The aunt with whom he lived in Seattle testified that he never sent for his trunk and that she never heard from him after he left her house.    We are of the opinion that the proofs fully warrant the conclusion reached by the trial court upon this question.    *Bailey v. Bailey,* 36 Mich. 181.

2. Some doubt is created by the testimony whether the assessments were all paid within the time in which they fell due and were payable.    It is insisted by the company that at least four of the assessments were not paid when due, and it is argued from this that

the policy lapsed, inasmuch as no certificate of good health was afterward made by the insured. Without this certificate no reinstatement could be had. The mother of the insured testified that she made the payments when due and she explains her act in making the statements of good health by the fact that she was requested by the local secretary to sign the statements. The circumstances surrounding the signing of these statements of good health are persuasive that the mother signed them in the insured's name because requested to by the local secretary, and his object in requesting it was to cover up his own neglect in failing to remit the assessments to the supreme secretary within the time fixed by the rules of the order. But whatever the motive of the local secretary was in requesting Mrs. Ferrand to sign the health certificate we are impressed with her testimony concerning the payments and therefore agree with the trial court that the payment of the assessments was timely made.

But it is argued by defendant that whether the fault lay with Mrs. Ferrand in not making timely payment of the assessments, or whether it lay with the secretaries in not remitting the assessments to their superiors within the time prescribed by the laws of the order, no recovery can be had because the local secretaries were the agents of the members and not the agents of the defendant. To establish this contention the following provisions are cited from the by-laws:

"Subordinate councils, their representatives, officers and members, are the agents of the members. Subordinate councils and the officers and members thereof in all matters pertaining to the admission of members, procuring proofs of claims, the collecting and transmission of moneys due the supreme council, or the transaction of any business pertaining to the funds of the order, are and shall be agents of the

members, and not of the supreme council.    Local councils or their officers or members shall have no authority whatever to disregard any of the laws of the order governing the benefit certificates, or the several funds of the order.

"Neither the supreme council nor the association shall be liable for the negligence or irregularity of the subordinate councils, officers, or members in any matter relating to the admission of members, procuring proofs of claim, or the collection and transmission of moneys due to the supreme council, nor shall the supreme council or the association be bound by any irregular or illegal act on the part of a subordinate council, its officers or any member thereof.

"Neither shall the supreme council or the association be liable for any illegal receipt of arrears for premiums from suspended members or those in arrears and the receiving of such arrears, and receipting therefor by any officer of a local council, and the reinstatement of a suspended member, except as provided in these laws, are hereby expressly forbidden and shall not be binding on the supreme council or the association."

Under defendant's contention we then have a situation presented where an insurance policy is issued and all dues and assessments payable by the insured have been fully and promptly paid to the local secretaries, but no recovery can be had because the local secretaries were negligent in remitting the assessments to their superiors within the time prescribed by the laws of the order, although all the assessments finally reached defendant and are yet retained by it; and this is asserted to be so, because the local secretaries are the agents of the insured and not of defendant. This is not a new argument.    Like and similar agency clauses have been before other courts, and, so far as our attention has been called to them, the courts have refused to give them effect.    More than ten years ago an effort was made in the Federal Supreme Court to sustain a similar agency clause.    Mr. Justice Brown

filed an elaborate opinion holding that the agency clause was invalid.    In part it was said:

"There seems to have been an attempt on the part of the defendant to invest Mr. Chadwick with the power and authority of an agent, and at the same time to repudiate his agency.    But the refusal to acknowledge him as agent does not make him the less so, if the principal assume to control his conduct.    It is as if a creditor should instruct his debtor to pay his claim to a third person, and at the same time declare that such third person was not his agent to receive the money.    It would scarcely be contended, however, that such payment would not be a good discharge of the debt, though the third person never accounted to the creditor; much less, that it would not be a good payment as of a certain day, though the remittance, through the fault of the person receiving it, did not reach the creditor until the following day.
"The position of the secretary must be determined by his actual power and authority, and not by the name which the defendant chooses to give him.    To invest him with the duties of an agent, and to deny his agency, is a mere juggling with words.    Defendant cannot thus play fast and loose with its own subordinates.    Upon its theory the policyholders had absolutely no protection.    They were bound to make their monthly payments to the secretary of the section, who was bound to remit them to the board of control; but they could not compel him to remit, and were thus completely at his mercy.    If he chose to play into the hands of the company, it was possible for him, by delaying his remittance until after the end of the month, to cause a suspension of every certificate within his jurisdiction; and in case such remittance was not made within thirty days from such suspension (§ 6) apparently to make it necessary under section 4 for each policyholder to regain his membership by making a new application, surrendering his forfeited certificate, making payment of the required membership fee, undergoing a new medical examination, and paying a premium determined by his age at the date of the last application.    In other words, by the failure of the secretary, over whom he

had no control, to remit within thirty days every member of the section might lose his rights under his certificate and stand in the position of one making a new application, with a forfeiture of all premiums previously paid.   The new certificate would, of course, be refused if his health in the meantime had deteriorated, and the examining physician refused to approve his application.   This would enable the company at its will to relieve itself of the burdens of undesirable risks by refusing certificates of membership to all whose health had become impaired since the original certificate was taken out, though such certificate-holder may have been personally prompt in making his monthly payments.

"It could not thus clothe the secretaries of the sections with the powers of agents by authorizing them to receive monthly payments and instructing them to account for and remit them to the supreme lodge at Chicago, and in the same breath deny that they were agents at all.   The very definition of an agent, given by Bouvier, as 'one who undertakes to transact some business, or manage some affair, for another, by the authority and on account of the latter, and to render an account of it,' presupposes that the acts done by the agent shall be done in the interest of the principal, and that he shall receive his instructions from him.   In this case the agent received his instructions from the supreme lodge, and his actions were, at least, as much for the convenience of the lodge as for that of the insured.   If the supreme lodge intrusted Chadwick with a certain authority, it stands in no position to deny that he was its agent within the scope of that authority." *Knights of Pythias* v. *Withers,* 177 U. S. 266 (20 Sup. Ct. 611).

The same question was before our own court in *Wagner* v. *Knights of Honor,* 128 Mich. 660.   The agency clause there passed upon read as follows:

"In receiving money from members in payment of relief fund assessments, and in all acts performed in complying with the relief fund laws of the order, the subordinate lodge and its officers are the agents of the members, and not the agents of the supreme lodge."

In commenting upon this clause the court said:

"It is now urged that plaintiff cannot recover, because Mrs. Wagner's agent, the local lodge, neglected to remit her dues to the grand lodge. This is, in effect, saying to the members of the defendant: 'The local lodge is authorized to receive the dues from members, to be remitted to us (the supreme lodge), but you pay it there at your risk. If our agent, who is authorized to receive this money, fails to pay it to us, it is your loss, and not ours.' A merchant might as well say to his debtors: 'Mr. A., my collector, is authorized to receive the money you owe me, but you must see that he gets the money to me, or you will not be relieved from liability.' This question was before the Supreme Court of the United States in *Knights of Pythias* v. *Withers,* 177 U. S. 260. (20 Sup. Ct. 611)."

Other cases to the same effect are: *Schunck* v. *G. W. & W. F.,* 44 Wis. 369; *Collver* v. *Modern Woodmen,* 154 Iowa, 615 (135 N. W. 67) ; *Dromgold* v. *Royal Neighbors,* 261 Ill. 60 (103 N. E. 584) ; *Leland* v. *Modern Samaritans,* 111 Minn. 207 (126 N. W. 728).

Effort is made by counsel to distinguish these cases from some of the later ones, but we are not in accord with counsel's conclusion. Our conclusion is that when Mrs. Ferrand paid all dues and assessments to the local secretaries she did all that she could or was bound to do, and if there were irregularities in the handling of these assessments by the local secretaries defendant must suffer the consequences rather than the plaintiffs.

The record shows that this insurance was taken out in the regular way and in good faith. After the insured went away the dues and assessments were paid by his mother. When the mother became fearful over the insured's disappearance she notified the officers of the local lodge and invoked their help in an effort to find him. With a knowledge that he had disappeared it accepted payment of his dues and assessments and

at the end certified that the insured was in good stand-
ing in the lodge.    This estops the defendant from
now making the defense that it received payment of
the assessments in ignorance that the insured had dis-
appeared.    The defendant made the contract, received
the assessments with knowledge that he had disap-
peared, and there is nothing left for it to do but to pay.

Other complaints are made to conclusions reached
by the trial court, but an examination of them dis-
closes no reversible error.    We are in accord with
the conclusions reached by the trial court, not alone
for the reason that they are in accord with the law,
but because they are in accord with a keen sense of
justice and common honesty.

The judgment is affirmed.

FELLOWS, C. J., and WIEST, CLARK, SHARPE, MOORE,
and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.