Mary Harris sued the Grand Lodge Free and Accepted Masons of Texas, an incorporated fraternal benefit society, for $481.30, the alleged amount of relief fund benefits due her upon the death April 3, 1927, of her husband, Henry Harris, by reason of his membership in "Square Deal Lodge No. 449," a subordinate body of defendant.
The only defense was that Henry Harris became "unfinancial" within the meaning of the laws of defendant by reason of nonpayment of $5 relief fund dues payable December 10, 1926, and as a consequence his name had been dropped from the rolls of the grand lodge. The jury found in answer to special issues that Henry Harris paid said relief fund dues before December 10, 1926, to the worshipful master of Square Deal Lodge; and that he did not pay such dues to the secretary of said local lodge. Upon these findings the judgment was for plaintiff, and defendant has appealed.
Two questions are presented by the appeal: (1) Whether the worshipful master of the local lodge was the agent of the grand lodge in the matter of collecting the dues; and (2) whether the admission in evidence of certain statements of the worshipful master with reference to such payment and the "financial" standing of Henry Harris at the time of his death constituted reversible error.
The following provisions of the grand lodge constitution control, we think, the question of the worshipful master's agency in the particular involved:
From article VI, § 5: "In case the Worshipful Master or the Lodge fails, refuses or neglects to drop from the roll the said brother who failed to pay the second installment of $5.00 Relief and notify him the next day of his being dropped or if he or the Lodge fails to notify the Grand Secretary on or before December 15th that the said brother has been dropped from the roll; then in that case the Lodge shall be required to send to the Grand Secretary and be held responsible to pay the second installment of $5.00 Relief and Grand Lodge dues for the said brother on or before December 15th of each and every Masonic year."
From article VI, § 9: "All Lodges or Masters and Secretaries found guilty of holding in their possession, and failing to send the same to the Grand Secretary the Relief and *Page 97 
Grand Lodge dues of a Master Mason, when due, shall upon due trial and conviction of the Master and Secretary be expelled from Masonry, or the Order and the local Lodge shall be held to pay the beneficiary the same sum paid all beneficiaries of that year."
Article VII, § 10: "Should any Lodge or a Master of a Lodge refuse or fail or neglect to collect the relief and Grand Lodge dues or other assessments put against his lodge or the membership of his lodge and transmit the same to the office of the Grand Secretary he shall be removed from office by the Grand Master."
From "Masonic Code of Texas," chapter VI:
 Duty of Secretary.
"Sec. 57. It shall be the duty of the Secretary to record all the proceedings of each meeting that are proper to be written, to make an annual report to the Grand Lodge when required, to collect all monies due the lodge, to keep the seal of the lodge, to affix it to all papers, to inform the Grand Secretary of all suspensions, expulsions, restoration and election, as soon as possible, after their occurrence and preserve carefully all books and papers coming into his hand and give bond as may be required."
There is also a provision which attempts to relieve the Grand Lodge of the responsibility for transmission to the grand officers of dues and assessments collected from members by local lodges, their masters, or secretaries. This provision is clearly void under the holding in Calhoun v. The Maccabees (Tex.Com.App.) 241 S.W. 101, and a number of other decisions in this state. The leading authority in this country upon the subject appears to be Supreme Lodge v. Withers, 177 U.S. 260, 20 S.Ct. 611, 44 L.Ed. 762, which was quoted from with approval in the Maccabees Case.
This proposition is conceded by appellant, but it is contended that the local secretary was proper officer of the local lodge to collect the dues and assessments, and that payment to the worshipful master was not binding on the grand lodge, unless it was shown that he delivered the payment to the local secretary.
The above provisions charge the worshipful master of the local lodge with the duty of collecting the dues and assessments that are payable to the grand lodge, and therefore clearly authorize him to make such collections. There is nothing in the above provision prescribing the duties of the local secretary with reference to the collection of moneys going to the grand lodge. It is to be observed that in this provision both the "grand lodge" and the "lodge" are used, and the duties of the secretary with reference to the collection of moneys is confined to those due the lodge. We think there is no room for reasonable doubt that the worshipful master of the local lodge is by these provisions of the constitution made the agent of the grand lodge for the purposes of collecting dues and assessments going to the grand lodge, and that therefore the payment to the worshipful master constituted a payment to the grand lodge.
With regard to the evidence of admissions or statements made by the worshipful master concerning the "financial" standing of Harris at the time of his death, the record shows the following:
Plaintiff testified that she paid the worshipful master in person the $3 prior to December 10, when it was due; that she gave to the worshipful master her husband's lodge book, in which it appears that all payments were entered up by the proper lodge officer; that the worshipful master took this book to the lodge and afterwards returned it to her, showing a credit of these dues. This book showed the credit and several subsequent credits of 50 cents each for monthly lodge dues. The secretary of the local lodge admitted that this $5 credit was in his handwriting, and made by him, but stated that it was made under the following circumstances: Harris came to his place of business, brought his book, and asked the secretary the amount and promised to pay him later. The secretary then made the credit as requested, returned the book to Harris, but Harris never paid the money.
Appellant introduced as its own witnesses the worshipful master and the secretary, the former denying absolutely that plaintiff paid him the $5, and also denying the several statements accredited to him. The secretary testified as above. Clearly the statements of the worshipful master to the effect that Harris was "financial" were admissible in impeachment of the worshipful master's testimony as a witness for appellant upon the issue of whether plaintiff in fact made the payment to him. We think it unimportant that evidence of some of these statements was admitted prior to the time that the worshipful master was put on the stand. If he had not testified and denied the payments to him, the testimony of the plaintiff would have stood without contradiction; and while perhaps it would not be conclusive evidence of payment as a matter of law, the evidence of the statements of the worshipful master would hardly be regarded as reversible error. When, however, the appellant made the worshipful master its own witness to disprove the testimony of plaintiff on the issue of payment, the statements of the worshipful master at variance with his testimony on that issue were proper matters for consideration in determining the weight of his evidence.
The trial court's judgment is affirmed. *Page 98