GRAND LODGE OF BROTHERHOOD OF RAILROAD TRAINMEN v. KENNEDY et al. (No. 1007.)*

(Court of Civil Appeals of Texas. Amarillo. June 7, 1916. Rehearing Denied Oct. 4, 1916.)

1. INSURANCE ⬠825(1) — MUTUAL BENEFIT INSURANCE—REINSTATEMENT—QUESTION FOR JURY.

Evidence *held* to warrant submission to jury of issue whether member of fraternal benefit association signed regular form for reinstatement and delivered it to the local lodge so as to make binding his reinstatement and render the association liable upon his death.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 2009; Dec. Dig. ⬠825(1).]

2. INSURANCE ⬠759—MUTUAL BENEFIT INSURANCE—RIGHT OF MEMBERS.

The right of reinstatement after expulsion is just as much a right, in a contractual sense, as the right to pay dues to the officers of a local lodge, with the expectation of a remittance to a grand lodge to keep alive existing privileges, and an expelled member, who abides with the

law of the order and signs a proper application for readmission, is entitled to reinstatement.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1920, 1921; Dec. Dig. ☞759.]

Appeal from District Court, Grayson County; W. M. Peck, Judge.

Action by Mrs. Nanty Kennedy and others against the Grand Lodge of Brotherhood of Railroad Trainmen. Judgment for plaintiffs, and defendant appeals. Affirmed.

Wood, Jones & Hassell, of Sherman, for appellant. Sturgeon, Blackburn & Sturgeon, of Paris, for appellees.

HENDRICKS, J. John B. Kennedy was a member of the Brotherhood of Railroad Trainmen, and met his death as a railway brakeman, on February 2, 1914. Previous to his death he held a beneficiary certificate, issued by the appellant, payable to the appellee Mrs. Nanty Kennedy, his mother, in the event of his death.

The Brotherhood of Railroad Trainmen is a labor organization and also a fraternal beneficiary association, the Grand Lodge of which consists of a delegate from each subordinate lodge, as well as the Grand Lodge officers. The subordinate lodge, of which Kennedy, deceased, was a member, is an association of individuals subordinate, of course to the Grand Lodge, and operates under a charter emanating from the supreme body. The Grand Lodge is the governing body,· making the laws and enforcing them, and is maintained and kept up through a per capita tax, levied upon all the members of the subordinate lodges. The Grand Lodge is controlled by a constitution, and each of the subordinate lodges has a local constitution, with the same provisions, making the jurisdiction of the Grand Lodge over the subordinate lodges one of uniformity. One of the ordinances of the order is, in substance, that any member of the lodge failing or refusing to pay his dues or assessments becomes expelled, without any notice or further action whatsoever, and thereby any beneficiary certificate held by a member is void. The dues of the members of the lodge are payable monthly in advance before the first day of each month, to the treasurer of the local lodge, and, if not so paid, the automatic expulsion exists, as stated. A member expelled for nonpayment of dues may be readmitted upon application on a form provided by the General Secretary and Treasurer of the Grand Lodge for that purpose, and by payment of all arrearages up to the date of expulsion, also the current month dues and assessments, and an additional fee of $1, designated as a "proposition fee." Beneficiary members having been expelled for nonpayment of dues, but readmitted after qualifying, are, of course, restored to all previous rights. When a member has been automatically expelled under the rules of the order for nonpayment of dues, either one of two forms, No. 138 or 131, as an application for readmission, prescribed by the Grand Lodge, must be used. If the readmission is within two months after expulsion, form 138 is used, but if an applicant is readmitted after two calendar months from the date of expulsion, a medical examination is necessary, and form 131 is required. Each of these forms, designated as an "Application for Readmission," must be signed by the expelled member and received at a regular meeting of the subordinate lodge.

Form 138, which is an element of this particular litigation, required to be signed by an applicant for readmission within 60 days after expulsion, contains a statement and declaration as to good health, and that applicant's sight and hearing have not been impaired, and that he has neither sustained an injury nor undergone a surgical operation, except as stated in the application. This application for readmission and reinstatement does not require the medical examiner's certificate as prescribed by form 131 to be used when readmission is attempted after 60 days from the date of expulsion.

John H. Kennedy, the deceased member, was expelled for nonpayment of dues on December 1, 1913, and on January 23, 1914, the Grand Lodge at Cleveland, Ohio, received from Kennedy's lodge at Sherman, Tex.; his arrearages transmitted by the treasurer of the local lodge. On January 28, 1914, A. E. King, the General Treasurer and Secretary of the Grand Lodge, at Cleveland, Ohio, wrote and mailed a letter to W. H. Johnson, the treasurer of the local lodge, as follows:

"Dear Sir and Brother: I am in receipt of your form 110, on which you report the readmission on January 2d, of J. H. Kennedy, expelled on December 1st, 1913, for nonpayment of dues. The readmission appears to have been illegal, no application for readmission on form 138 having been submitted and such application is required where a member has been expelled for nonpayment of dues and readmission takes place within two calendar months from the date of expulsion. Unless such application is submitted showing the readmission to have been regular the money remitted for him must be returned when it is reached in its regular order. If the application referred to was not used then, of course, he cannot renew his membership after the close of this month until a new application for beneficiary certificate has been forwarded to the Grand Lodge and approved.

"Fraternally yours,
"[Signed] A. E. King."

Kennedy's dues for February were also paid to and collected by the local lodge at Sherman within the time prescribed by the rules of the order, before his death February 2d. The application for readmission on form 138, over the signature of Kennedy, was a necessary prerequisite to his readmission into the order, and to the reinstatement of his beneficiary certificate.

Upon the submission of special issues the jury found that Kennedy signed a written application for readmission as a member of the Brotherhood, on the form prescribed by

the Grand Lodge, and also found that such application was forwarded to and received by the Grand Secretary of the Grand Lodge. The Grand Lodge, the appellant herein, assigns error that a peremptory instruction should have been given in its behalf by the trial court to the jury. After giving the brief of appellant, relative to the particular question, careful consideration, we conceive the contention to be that the evidence is insufficient to show that such form was ever signed, and likewise insufficient to show that it was sent to the Grand Treasurer at Cleveland, Ohio.

[1] W. H. Johnson, the local treasurer, testified that after the suspension of Kennedy, he made two remittances to the Grand Lodge of his arrearages. Kennedy was expelled the last day of November and was readmitted, in so far as the action of the local lodge is concerned, about the 3d of January, though the arrearages were not forwarded to the Grand Lodge until about the 26th. The letter and testimony of Mr. King, the General Secretary and Treasurer, is affirmative to the effect that form 138 (the necessary application for readmission) did not accompany the dues. The effect of Johnson's testimony is that while he did not see Kennedy sign the application for readmission, to the best of his recollection he signed the proper readmission blank, and that the same was forwarded to the Grand Lodge. We infer from the testimony that any members having the readmission blanks could take the signature on the blank of one of the expelled members for readmission. Johnson said the arrearages were collected with the additional $1 readmission fee, and further said, "To the best of my knowledge the blank was turned into the lodge, properly signed," but he did not know who turned it in, and testified to an opinion, which does not seem to have been objected to, that to the best of his knowledge and recollection, as to the readmission of the deceased, he did his duty under the laws and regulations of the Grand Lodge.

John McDuffie, who was the president of the lodge, but who had never in reality served in that position, testified there was a meeting of the local lodge in January, 1914, at which he was present and at which time W. H. Johnson, the treasurer, acted as the president of the meeting. He said, "Kennedy was there in the lodgeroom, as any other man would have been that had been readmitted." He further said:

"When a man is readmitted he does not go through the form of initiation; I mean he went in just the way that a man was usually readmitted. I mean that the man was readmitted on a fair, square basis to the best of my knowledge and belief, at the time he entered the lodge, * * * according to the constitution of the lodge."

This testimony does not seem to have been objected to. If we were to admit that the local officers of the subordinate lodge did not forward the application for readmission to the Grand Lodge, and it would seem that the strong preponderance of the testimony would indicate that fact, however, under the law, we think that appellee could recover on the beneficiary certificate, on the theory that the testimony was sufficient to submit to the jury that such a readmission blank was actually signed by Kennedy and received by the local lodge.

Form 110 referred to in a letter of the General Secretary and Treasurer, which, of course, is distinct from forms 138 and 131, is not described in this record as to the particular function it performs. We assume that it is a form signed by the local treasurer or officer of the subordinate lodge, affording some character of notification to the Grand Lodge of the action of the inferior body as to the particular member. This record suggests only two forms, Nos. 131 and 138, necessary to be signed by an expelled member, according to conditions. We infer also from the record that the local officers of the subordinate lodge necessarily knew that a readmission blank, either one or the other, according to the expiration of time after the expulsion, was necessary to be signed for reinstatement and readmission. Hence, when the local officers testified that, to the best of their recollection and according to their best memory, a formality commonly recognized as a necessary prerequisite was actually complied with, and that to the best of their recollection such a blank was signed by the expelled member, and in the possession of the lodge, accompanying that member's readmission, at least to the local lodge, the testimony is sufficient on that particular question to go to the jury that such a blank was signed.

Bacon, in his work on Benefit Societies and Life Insurance, vol. 2, § 385a, says that a provision is contained in the by-laws of many associations that the officers of the subordinate lodge, so far as the collection and remitting of assessments is concerned, shall be the agents of the members and not of the superior body. "Wherever such provisions have come before the courts they have held, with practical unanimity, that the duty of the member is discharged by the payment of his assessments to the officer designated by the laws of the society to receive them, and his rights will not be affected by the failure of such officer of the lodge to remit the amount collected to the Supreme or Grand body." This is the rule, though it is stipulated in the ordinances that the subordinate lodge and its officers are the agents of the members and not the agents of the Supreme Lodge. Same authority.

The Supreme Court of the United States, with reference to the failure of an officer of a local lodge in remitting the payment of dues, and, also passing upon the stipulation that such an officer was the agent of the members and not of the Grand Lodge, said:

"The position of the secretary must be determined by his actual power and authority and

not by the name which the defendant chooses to give him. To invest him with the duties of an agent, and to deny his agency, is a mere juggling with words. Defendant cannot thus play fast and loose with its own subordinates. Upon its theory the policy holders had absolutely no protection. They were bound to make their monthly payments to the secretary of the section, who was bound to remit them to the Board of Control; but they could not compel him to remit, and were thus completely at his mercy. If he chose to play into the hands of the company, it was possible for him, by delaying his remittance until after the end of the month, to cause a suspension of every certificate within his jurisdiction," etc. Supreme Lodge Knights of Pythias v. Withers, 177 U. S. 267, 20 Sup. Ct. 611, 44 L. Ed. 765; Wagner v. Supreme Lodge, Knights of Honor, 128 Mich. 660, 87 N. W. 903; Knights of Pythias v. Bridges, 15 Tex. Civ. App. 196, 39 S. W. 333.

[2] The right of reinstatement, through the medium of the subordinate lodge to restore pre-existing rights, after expulsion, is just as much a right, in a contractual sense, as the right to pay dues to the officers of a local lodge, with the expectation of a remittance to a Grand Lodge, for the purpose of keeping alive existing privileges. An expelled member who follows the law of the order, in signing a proper application for readmission, looking to a restoration of his membership, after signature to the proper form and reinstatement by the subordinate lodge, is just as much at the mercy of the officers of that body, with no practical control over them, as one who pays his dues for regular membership and pursues his ordinary avocations without thought but that such local officers will fulfill their duty.

The case of Moderns v. Pike, 76 S. W. 774, is cited as asserting a contrary principle to the one herein enunciated. A careful reading of the case and consideration of the basis of facts in the opinion probably do not justify the asserted analogy; however, we think the correct rule applicable to the facts here is the one asserted by Bacon and the Supreme Court of the United States.

The case of Brotherhood of Railway Trainmen v. Dee, 101 Tex. 598, 111 S. W. 396, by the Supreme Court of the state, on the facts found by us in this case, is not in conflict with our conclusion.

We think the other assignments do not require discussion, and they are overruled.

The judgment of the trial court is affirmed.