SOVEREIGN CAMP OF WOODMEN OF THE WORLD v. AKINS.    (No. 2214.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 23, 1920. Rehearing Denied March 4, 1920.)

1. INSURANCE ⬉➾748—INSURED DYING NATURAL DEATH NOT ENTITLED TO RECOVER WHERE EMPLOYED IN PROHIBITED OCCUPATION.

Where fraternal benefit certificate provided that it would be suspended while the member was working in certain prohibited occupations, beneficiary cannot recover where the member was employed in a prohibited occupation at the time of his death, although his death was from natural causes, and not the result of exposure to dangers incident to such employment.

2. INSURANCE ⬉➾726 — CONSTRUCTION SO AS NOT TO WORK FORFEITURE.

Such a construction of a life certificate will not be adopted as will work a forfeiture, if there is any other reasonable one which may be applied.

3. INSURANCE ⬉➾748 — WHETHER INSURED WAS EMPLOYED IN AN ELECTRIC CURRENT GENERATING PLANT IS TO BE DETERMINED BY PHYSICAL SITUATION AND NOT BY IDENTITY OF EMPLOYER.

Whether or not member of fraternal benefit order was employed "in an electric current generating plant," within the meaning of his benefit certificate, is to be determined by the physical situation, and not by the identity of his employer.

4. INSURANCE ⬉➾748—INSURED NOT EMPLOYED "IN ELECTRIC WORKS" OR "IN AN ELECTRIC CURRENT GENERATING PLANT."

A fraternal benefit society member who was a fireman in the boiler room of a plant engaged in generating electricity and making ice was not employed "in electric works" or "in an electric current generating plant" within the meaning of a life certificate classifying such employments as extrahazardous, and providing that certificate should be suspended while a member is employed in such places unless he pays an extra premium, where the boiler room was separated from the electric current generating machinery by a partition, and the member was never required to go into the room where such machinery was located.

⬉➾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. INSURANCE ☞817(2)—BURDEN ON INSURER TO SHOW APPARENTLY VALID CERTIFICATE TO BE INVALID AND FORFEITED.**

In an action on a life certificate, where the fraternal society interposes a defense that the certificate sued on is invalid and was forfeited by reason of failure of the member to notify the clerk of his local camp of his employment in an extrahazardous occupation, the burden is upon it to prove the invalidity of the certificate.

**6. INSURANCE ☞809 — BURDEN ON INSURED TO SHOW INVALIDITY OF APPARENTLY VALID CERTIFICATE.**

Where fraternal benefit society member lost his original certificate, in which his mother was beneficiary, and applied for and was issued a new one in which his wife was made beneficiary, in an action by the wife on the second one it was not a sufficient defense to show that prior to the issue of the second certificate the member had forfeited the original by engaging in an extrahazardous occupation without notifying the clerk of the local camp and paying extra premiums, in the absence of a showing that the second certificate was procured by false representations or some form of deception, the member not having engaged in the prohibited occupation after the issuance of the second certificate.

**7. INSURANCE ☞755(3)—INSURER ESTOPPED TO DENY LIABILITY ON CERTIFICATE AFTER ACCEPTING PAYMENT OF ASSESSMENTS.**

Where fraternal benefit society member lost his original certificate and applied for a new one, which was issued by the society with knowledge that prior thereto the member had engaged in a prohibited occupation, in which he was no longer engaged, and thereafter accepted payment of assessments, it was estopped to deny liability under the second certificate on the ground that the original certificate was forfeited by reason of the prohibited employment.

Levy, J., dissenting in part.

Appeal from Fannin County Court; A. P. Balding, Judge.

Action by Callie Akins against Sovereign Camp of the Woodmen of the World. Judgment for plaintiff, and defendant appeals. Affirmed.

Thos. P. Steger, of Bonham, for appellant. Cunningham & McMahon, of Bonham, for appellee.

HODGES, J. In 1904 J. D. Akins applied for and secured from the appellant a policy insuring his life in the sum of $500. His mother was named as the beneficiary. At that time Akins was a section hand, and was so classified in his application for the insurance. About the 1st of October, 1918, having lost that certificate of insurance, he applied for and secured another in lieu of the original, in which his wife, Callie Akins, was named as the beneficiary. That policy was issued upon an affidavit by Akins stating that the original had been lost or mislaid and had not been assigned. A few months after the issuance of this second certificate Akins died from natural causes. Upon the refusal of the appellant to pay the amount claimed upon the policy, Mrs. Callie Akins, the appellee, filed this suit and recovered the judgment appealed from.

The defense relied on in the trial court is that after the issuance of the first policy of insurance Akins changed his occupation to one classified by the appellant's laws as "extrahazardous," and that he failed to comply with those laws in giving notice of the change of occupation and paying the additional premiums provided for. Section 43 of the appellant's by-laws in force from 1904 to 1909 contained, among other things, the following provision:

"Persons engaged in the following occupations, to wit, professional horseshoers, marine divers, members of paid fire departments, * * * employés in electrical works, etc., may be admitted to membership if accepted by the sovereign physician, but their certificates shall not exceed two thousand dollars, and their rate of assessment shall be thirty cents per thousand in addition to the regular rate while so engaged in such hazardous occupation."

It was further provided that if a member engages in any of the occupations or business included in section 43 he should, while so engaged, pay the increased rate of assessment therein provided. The nonpayment of the increased rate referred to by those entering prohibited or more hazardous occupations shall work a suspension of the member the same as if the original amount were not paid, and on the same condition,

"and during such suspension his certificate shall be null and void until he shall reinstate himself in the same manner as if the original assessment had been unpaid and he was suspended therefor."

Section 43, as amended in 1909 and in force at the time of the trial, provides as follows:

"Persons engaged in the following occupations, to-wit, marine divers, structural iron workers, * * * employés in electric current generating plants, etc., may be admitted to membership if accepted by the sovereign physician, but their certificates shall not exceed two thousand dollars each, and their rate of assessment shall be thirty cents for each one thousand dollars of their beneficiary certificates, in addition to the regular rate, while so engaged in such hazardous occupation. If a member engages in any of the occupations or business mentioned in this section he shall within thirty days notify the clerk of his camp of such change of occupation, and while so engaged in such occupation shall pay on each assessment thirty cents for each one thousand dollars of his beneficiary certificate in addition to the regular rate. Any such member failing to notify the clerk and to make such payments as above provided shall stand suspended and his beneficiary certificate be null and void."

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

It was further provided, in substance, that the constitution and laws of the Sovereign Camp of the Woodmen of the World then in force, or which might be thereafter enacted, the application, and certificate should constitute a part of the beneficiary contract between the order and the member. It is contended in this appeal that the evidence shows, as a matter of law, that after the issuance of the original certificate, and prior to his death, Akins had changed his occupation, and had become an employé "in an electrical generating plant," that he had failed to give the notice required by the appellant's by-laws, and had not paid the additional assessment imposed upon one who engages in a more hazardous occupation.

At the time of his death, and for several years prior thereto, Akins resided at Leonard, Tex., a town of about 1,400 inhabitants. In the fall of 1911 he was employed as a fireman by the manager of the electric light and ice plant in that town. J. C. Christian, the manager of that plant, thus describes them:

"The two plants were under the same roof. The house in which the two plants were located and contained was about 40 feet wide, running east and west, and about 140 feet long, running north and south. The two boilers furnishing steam for the two plants were located in the south end of this house, and that is where Akins worked as fireman for the two boilers. About 12 feet north from the south end of this house was a partition that ran clear to the roof of the house. Just north of this partition the engine of those boilers was located, something like 12 to 16 feet from the south end of the house. Those boilers furnished the steam, and the only steam that was generated in the house, for running both plants. All of the electric light machinery was located around the engine. Further north from this engine the ice plant was located. There was no partition between the engine and other electric apparatus and the ice plant. The light plant generated electric currents; that was our business—to furnish electric currents for people who wanted lights and to operate fans and to do ironing with. * * * Akins was our daytime fireman; but in the busy fall and winter season he frequently remained on duty until the night current was turned on from the light plant, and he would then fire those boilers during the night current. For about six months in the year—say from November the 1st to May the 1st—we did not operate or furnish electric currents during the daytime. We had another fireman for night service, who relieved Akins about 6 o'clock in the afternoon; but, as I stated, I know that Akins did lap over on the night fireman's time, and that Akins did during the time he was employed fire the boilers while the full electric current was on, firing the boilers after dark. I don't think Akins knew anything about electricity. Under our contract with Akins he was under no duty to do anything with the electrical part of the machinery nor to fire the boilers. The steam that the two boilers furnished operated the two plants. I had another man hired to look after the light part of the electric light plant.

* * * I know that during the winter months of 1917–18 Akins fired the boilers that operated the electric apparatus that generated electric currents. We generated electric currents; that was our business. Akins had been in good health up to the time he took his bed, about five weeks before his death. The boiler which J. D. Akins fired was 16 feet away from the electric machinery. It was no part of the duty of Akins to go into the room where the dynamo and the electrical machinery were located, and, so far as I know, he never went in there. Practically all of Akins' time in the summer months was taken up by pulling ice. After May, 1918, he fired no more, but helped to make ice."

It is conceded that Akins never gave any notice to the clerk of his camp of a change of occupation, and that he never at any time paid the additional amount required of one who engages in a more hazardous occupation.

[1-4] The court found in his conclusions of fact that Akins was never at any time, within the meaning of section 43 of the appellant's constitution and by-laws, an employé "in electrical works," or an employé "in an electric current generating plant," and rendered judgment accordingly.

The question presented in this appeal is, Does the evidence show, as a matter of law, that Akins had, after the issuance of his original policy of insurance, been an employé "in an electric current generating plant"? The validity of the policy of insurance depends upon whether or not he had been so employed. It is immaterial that he did not die as the result of exposure to some of the dangers incident to that employment. Where the parties have by their contract designated certain occupations as "extrahazardous," and imposed conditions for the maintenance of insurance upon the lives of those engaged therein, the courts have no right to inquire into the question of hazard, but must enforce the contract as written. But in construing the language, "employé in an electric current generating plant," when applied to a business enterprise such as this, which is composed of more than what may properly constitute one distinct plant, it is permissible to consider the dangers which the parties had in view and against which they undertook to provide. Evidently in this instance the insurer was endeavoring to protect itself against the dangers which result from constant personal exposure to electric currents generated in a plant established for that purpose. To say that Akins' employment was in this instance such as to forfeit his policy is to give to the term "plant" its broadest possible meaning. Keeping in mind the well-established rule in such cases, such a construction should not be adopted if there is any other reasonable one which may be applied. The appellant's laws apply to an "employé in an electric current generating plant," and

not necessarily to one engaged in the service of an electric current generating plant. If Akins' employment required him to perform his duties as fireman in an electric current generating plant, it would be immaterial that his services were being rendered for some person other than the owner of that plant. The hazards against which the appellant sought to provide result from the physical location and exposure of the employé, and not from his contractual relations to the owner of the plant. The evidence in this case shows that the room Akins worked in was separated from the electrical machinery by a partition wall reaching to the roof of the building. His contract of employment did not require him to go into the room where the electrical machinery was situated, and there is no evidence that he did go there. Let us assume, by way of illustration, that, while occupying the same relative physical location with reference to the electrical machinery, Akins was in the service of a different employer; that the boilers attended by him generated steam, which was conducted in a different direction, and used for operating different machinery owned by a different employer, although occupying the same relative position towards the electrical machinery: Could it be said that he was employed "in an electric current generating plant"? We think not. Yet his physical situation would be relatively the same. If the boilers which he fired can be said to be situated "in an electric current generating plant" they were within the zone of hazard, and the fact that they furnished steam for operating other machinery, and had no connection with the electrical plant, would be wholly immaterial. Akins would still be, within the meaning of the appellant's law, employed in "an electric current generating plant." If he would be considered outside of the zone of hazard, and not "in the electric current generating plant," when firing the same boilers for a different employer, he would not be transferred to the place of hazard by merely changing the name of his employer. Whether or not he was employed "in an electric current generating plant" is to be determined by his physical situation and not by the identity of his employer. The company by which Akins was employed had established an enterprise operated for two distinct purposes, and which may include two distinct industrial plants—one for manufacturing ice and another for generating electricity. While steam was used as the motive power in both, the boilers used for that purpose did not belong to that class of machinery which was peculiar to either. A stationary steam boiler is an equipment that may be used for furnishing the motive power for any kind of stationary machinery. It may occupy a different room, or even a different building, from that in which the plant which it moves is located,

and when so isolated it cannot, in one sense, be said to be "in the plant" whose machinery it moves. Firing a stationary boiler is often classed as a distinct occupation, which has its own hazards, and it should not be regarded as partaking of those peculiar to other occupations, except when the physical location of the fireman exposes him to other dangers. We are of the opinion that, under the circumstances shown in this case, the term "electric current generating plant" may reasonably be limited to that part of the building in which the electric machinery was located.

A majority of the court is of the opinion that upon the ground stated above the judgment of the county court should be affirmed.

[5-7] But conceding that at the time Akins was engaged in firing the steam boilers he was employed "in an electric current generating plant," and that because of his failure to comply with the appellant's laws his insurance had been forfeited, does it follow as a matter of law that his beneficiary cannot recover upon this policy? The original certificate was issued in 1904, and in it the mother of Akins was named as the beneficiary. The policy sued on was issued in October, 1918, and the wife of the insured was named as the beneficiary. The conduct which it is claimed avoided the insurance occurred before the issuance of the second certificate. Christian testified that from May, 1918, till the time of his death Akins did not fire the boilers, but was employed exclusively in the ice plant. When the policy sued on was offered in evidence, together with proof of death of the insured, it devolved upon the appellant, when relying upon the defense here interposed, to prove the invalidity of the certificate. The question then is, Was that done by proving that the first certificate had been forfeited? In one sense it may be said that the issuance of the second certificate was intended as a continuation of the same insurance, but it cannot be treated as in all respects the continuation of the same contract. Such might have been the result had there been merely a reissuance of a lost certificate. But in this case the new certificate contained stipulations and conferred rights not embraced in the first. It was made payable to an entirely different beneficiary—one who could not have claimed anything under the original policy. Nothing has occurred since the making of that contract to forfeit the rights which it created. It must therefore be treated as binding upon the appellant unless its execution was procured by false representations or some form of deception. In order to avoid a contract apparently valid, it devolved upon the appellant to allege and prove those essential facts. In this case that was not done. While the appellant alleged that it issued the second certificate in ignorance of the fact that the in-

sured had ever changed his occupation to one more hazardous, no proof was offered in support of that averment. The record merely shows that the insured gave no notice to the clerk of his local camp as required by the laws of the order. If the appellant with actual knowledge of the character of the work in which the insured had formerly been employed, but was no longer engaged in, issued the new certificate, and thereafter accepted the payment of his assesments, it should now be estopped to deny its liability. Equitable Life Assurance Society v. Ellis, 105 Tex. 526, 147 S. W. 1152, 152 S. W. 625; Dromgold v. Royal Neighbors of America, 261 Ill. 60, 103 N. E. 584; Grand Lodge of B. of R. Trainmen v. Kennedy et al., 188 S. W. 447; 2 Joyce on Insurance, § 442a; Modern Woodmen of America v. Weekley, 42 Okl. 25, 139 Pac. 1138; Springfield Fire & Marine Ins. Co. v. Wade, 95 Tex. 598, 68 S. W. 977, 58 L. R. A. 714, 93 Am. St. Rep. 870; Sumter Tobacco Warehouse Co. v. Phœnix Assurance Co., 76 S. C. 76, 56 S. E. 654, 10 L. R. A. (N. S.) 736, 121 Am. St. Rep. 941, 11 Ann. Cas. 780.

For the reasons stated we conclude that the judgment should be affirmed.

LEVY, J. (dissenting in part), consents to result, but differs as to one of the grounds upon which the decision rests.